# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **MISGANAW ALEMU** | ) | |
| **12630 VEIRS MILL RD., APT. #908** | ) | |
| **ROCKVILLE, MD 20853** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **SEIFE ASFAW** | ) | |
| **106 SCHUYLER RD., APT# 208** | ) | **Case No. 17-1904** |
| **SILVER SPRING, MD 20901** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **ALEMAYEHU ABERA AYANE** | ) | |
| **819 NORTH WEST DR** | ) | |
| **SILVER SPRING, MD 20901** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **GASHAW BIRBO** | ) | |
| **1336 MISSOURI AVE NW, APT# 406** | ) | |
| **WASHINGTON, DC 20011** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **NEKABE DEBEBE** | ) | |
| **9119 MANCHESTER RD, APT# 402** | ) | |
| **WASHINGTON, DC 20011** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **DESSALEGN N. EGETA** | ) | |
| **1849 KENDALL ST NE** | ) | |
| **SILVER SPRING, MD 20901** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **ALEMAYEHU L. GEBREMARIAM** | ) | |
| **1836 METZEROTT RD, APT# 425** | ) | |
| **ADELPHI, MD 20783** | ) | |
| | ) | |
| **and** | ) | |

1

**TADDESSE GIRMA**                      )
**731 KENNEDY ST NW**                   )
**WASHINGTON, DC, 20011**               )
                                        )
  **and**                     )
                                        )
**DEMISSE M. GULTI**                    )
**6000 13TH ST NW, APT# 305**           )
**WASHINGTON, DC 20011**                )
                                        )
  **and**                     )
                                        )
**ABDIYE A. HASSEN**                    )
**1444 ROCK CREEK FORD RD. NW, APT# 209** )
**WASHINGTON, DC 20011**                )
                                        )
  **and**                     )
                                        )
**DAWIT HAYLEMARIAM**                   )
**11613 LOCKWOOD DR., APT# 3**          )
**SILVER SPRING, MD 20904**             )
                                        )
  **and**                     )
                                        )
**GOITEM TEKA KAHSAY**                  )
**7731 RIVERDALE RD., APT# 303**        )
**NEW CARROLLTON, MD 20784**            )
                                        )
  **and**                     )
                                        )
**MISGANAW LIBEN**                      )
**4418 GEORGIA AVE. NW**                )
**WASHINGTON, DC 20011**                )
                                        )
  **and**                     )
                                        )
**BIRHANU A. MASERESHA**                )
**9000 GLENVILLE RD.**                  )
**SILVER SPRING, MD 20901**             )
                                        )
  **and**                     )
                                        )
**ANTIGEGN K. MENGISTIE**               )
**4418 GEORGIA AVE. NW**                )
**WASHINGTON, DC 20011**                )

|                                                                                   |     |
|-----------------------------------------------------------------------------------|-----|
| **and**                                                                           | )   |
|                                                                                   | )   |
|                                                                                   | )   |
| **MENGISTU WERGENE**                                                              | )   |
| **9119 MANCHESTER RD., APT# 402**                                                 | )   |
| **SILVER SPRING, MD 20901**                                                       | )   |
|                                                                                   | )   |
| **and**                                                                           | )   |
|                                                                                   | )   |
| **GENETU YIGZAW**                                                                 | )   |
| **630 SHERIDAN ST.**                                                              | )   |
| **HYATTSVILLE, MD 20783**                                                         | )   |
|                                                                                   | )   |
|                                                                                   | )   |
| **Plaintiffs,**                                                                   | )   |
|                                                                                   | )   |
| v.                                                                                | )   |
|                                                                                   | )   |
|                                                                                   | )   |
| **DEPARTMENT OF FOR HIRE VEHICLES,**                                              | )   |
| **(FORMERLY KNOWN AS THE DC TAXICAB**                                             | )   |
| **COMMISSION),**                                                                  | )   |
| **2235 SHANNON PL SE, STE 3001**                                                  | )   |
| **WASHINGTON, DC**                                                                | )   |
|                                                                                   | )   |
| **and**                                                                           | )   |
|                                                                                   | )   |
| **FOR HIRE VEHICLE ADVISORY COUNCIL**                                             | )   |
| **2235 SHANNON PL SE, STE 3001**                                                  | )   |
| **WASHINGTON, DC**                                                                | )   |
|                                                                                   | )   |
| **and**                                                                           | )   |
|                                                                                   | )   |
| **JEFFREY SCHAEFFER,**                                                            | )   |
| **A.K.A. JERRY SCHAEFFER**                                                        | )   |
| **3399 BENNING ROAD NE**                                                          | )   |
| **WASHINGTON, DC 20019,**                                                         | )   |
|                                                                                   | )   |
| **and**                                                                           | )   |
|                                                                                   | )   |
| **UKNOWN DFHV OFFICIAL #1**                                                       | )   |
| **2235 SHANNON PL SE, STE 3001**                                                  | )   |
| **WASHINGTON, DC**                                                                | )   |
|                                                                                   | )   |
| **and**                                                                           | )   |
|                                                                                   | )   |

**UKNOWN DFHV OFFICIAL #2**                           )
**2235 SHANNON PL SE, STE 3001**                      )
**WASHINGTON, DC**                                    )
                                                      )
        **Defendants.**                                 )
_____          )

## COMPLAINT FOR PROMISSORY ESTOPPEL, FRAUDULENT MISREPRESENTATIONS, VIOLATION OF THE FOURTEENTH AMENDMENT, AND A CONSPIRACY TO ATTEMPT TO OR ACTUALLY CREATE A MONOPOY IN THE DC TAXICAB MARKET BASED ON D.C. CODE §28-4502

**COME NOW** the Plaintiffs herein, whose desire and privilege to secure an H tag along with the vehicle license plate has been frustrated by the activities engaged in by the Defendants named herein. Defendants Schaeffer and officials working in the Department of For Hire Vehicles (DFHV), formerly known as the D.C. taxicab commission (DCTC), have conspired to: a) monopolize the D.C. taxicab market; b) adopt a "double standard" when it comes to approving the issuance of H tags; c) keep the Plaintiffs out of the market as long as they can; and d) continue to by deprive them of an H tag and therefore frustrate their ability to become independent taxicab owners. The DCTC Officials had made numerous misrepresentations to the Plaintiffs, and as a result have forced the Plaintiffs to incur needless fees and expenses for attending and completing taxicab school and a driver etiquette course. Consistent with guidelines published on the DFHV website, each Plaintiff registered with the DFHV as a for-hire candidate and received a formal certificate from the DFHV, proof that they had completed their requirements to secure an H tag (see i.e. Exhibit A). Plaintiffs had been repeatedly informed by taxicab commission officials, that: (a) once they registered with the DFHV as an H tag candidate, (b) completed school requirements and (c) received the necessary certificate from the DFHV, they would be able to apply for and receive an H tag. This turned out to be a complete fabrication.

As a result of the misrepresentations made by the taxi commission officials, and Defendant Schaeffer's intent to monopolize the DC Taxi Cab market, aided and abetted by unknown DFHV officials, Plaintiffs have incurred substantial damages—between approximately $1,360,000 and $1,700,000—as referenced in the Wherefore clauses contained herein. They are entitled to treble damages under D.C. Code § 28-4503, which totals approximately between $3,468,000 and $4,080,000. Undoubtedly, the Taxi Cab companies operating in this D.C. market will oppose the relief requested by the Plaintiffs, but that is to be expected. *See Joe Sanfelipo Cabs, Inc. v. City of Milwaukee*, 839 F.3d 613 (7th Cir. 2016). Plaintiffs seek a jury trial on all factual issues arising out of this complaint, including Defendant Schaeffer's intent to monopolize the D.C. Taxi Cab market as a direct result of conspiring with unknown officials #1 and #2 at the DFHV.

## PARTIES

1. The Plaintiffs named herein are all cab drivers who were informed by officials at the D.C. Taxicab Commission (now known as the Department of For Hire Vehicles, or DFHV), during the relevant time period described herein that if they wanted an H tag they had to: a) pay approximately $800 in fees; b) secure the requisite certificate from the DFHV; c) attend and complete courses at University of the District of Columbia (hereinafter "UDC"). After satisfying these conditions and receiving their certificate in the mail, they approached taxi cab commission officials, and then DFHV officials for their H tags. Unbeknownst to them, and as further explained herein. Defendant Schaeffer had made sure that new taxicab regulations were written in such a way that the Plaintiffs would not be able to secure their H tag, even if they satisfied the above three conditions. The Plaintiff cab drivers are in good health, and are able to work for at least another 20 years.

As a result of Defendant Schaeffer's conduct, and the conspiracy he engaged in with DFHV officials as alleged herein, they have been permanently denied the right to secure an H tag. If they had secured an H tag in 2015/2016, they would have been able to make at least an extra $4,000 or $5,000 every year above the earnings made by driving a Schaeffer cab and paying monopolistic rents for that privilege. Besides seeking the return of all of the monies they spent attending school, trying to secure a certificate, and completing the training courses, Plaintiffs have lost significant earnings, because they expected to make, on average, approximately $1,500,000 over the course of the next 20 years upon receiving their H tags. In total, they have been damaged in the sum of somewhere between, as described herein, $1,360,000.00 and $1,700,000.00, and based on D.C.'s monopoly act, they are entitled to treble damages, or somewhere between $3,468,000 and $4,080,000.

2. <u>Defendant For Hire Vehicle Advisory Council (DFHAC)</u>: Defendant Schaeffer and his colleagues are members of the DFHAC, and in that capacity they advise DFHV officials. The Council advises officials in the DFHV on any and all issues that arise concerning regulation of the taxicab market. Defendant Schaeffer is, of course, a member of the DFHAC and, in that capacity, advises DFHV officials to: (a) reject any and all overtures from taxicab drivers seeking to obtain an H tag, (b) make sure that taxicab industry kingpins, like Defendant Schaeffer, always has a voice concerning the regulation of the taxicab industry, and (c) make sure that no new H tags are issued except in the case of taxicab drivers affiliated with the Schaeffer family.

3. <u>The Department of For Hire Vehicles (DFHV)</u> is a government entity located in this judicial district and is the exclusive regulatory agency, which monitors all activities in the

D.C. taxicab market. It is where Defendant Schaeffer has a full-time office. He uses that

unique position to monitor the activities and rulings of DFHV officials, especially as they

concern his taxicab empire and implementation of a restrictive medallion system—his

number one priority.

4.  The mission of the Department of For-Hire Vehicles (DFHV) is "to protect public

interest by regulating the vehicle-for-hire industry to allow the citizens and visitors of the

District of Columbia to have safe, affordable, and accessible transportation options."

Implementation of a restrictive medallion system (Defendant Schaffer's goal) will ensure

that D.C. citizens, visitors to the city on business and tourists will no longer have an

affordable, local transportation option.

5.  Defendant Schaeffer: Defendant Schaeffer and his family do extensive business in this

judicial district and have been doing so for at least 20 years in their effort to monopolize

the D.C. taxicab market. The family controls and operates (directly or indirectly) at least

11 taxicab companies–and perhaps as many as 20—two insurance companies, and a car

repair shop. He has his offices here in this Judicial District located at 3341 Benning Road

NE, Washington DC, as well as his own, personal office at the DFHV. In addition, the

family has retained numerous D.C. lobbyists to write regulations for the taxicab

commission, (now the DFHV), which regulations determine, *inter alia*, which drivers can

secure an H tag.

6.  There is additional evidence as to Defendant Schaeffer's ability to monopolize the local

D.C. taxicab driver market. For example, in 2015 Defendant Schaeffer advocated for the

establishment of an inner-city taxicab van service. As a result of his initiative, and the

cooperation of DFHV and DFHAC officials, his company was the only company that

secured in 2016 a very lucrative $600,000 local taxicab van service in the inner-city.

Despite the fact that there are hundreds of competent, qualified, and certified minority

transportation enterprises in the D.C. metropolitan area, no other company has received a

similar lucrative contract.

7. Defendants Unknown DFHV Officials #1 and #2 used to work for the D.C. Taxicab

Commission, now known as the DFHV. While working at the Taxicab Commission, they

helped draft regulations which now preclude the Plaintiffs from securing an H tag. At

Defendant Schaeffer's urging, they agreed to finalize H tag regulations as drafted by one

of Defendant Schaeffer's lobbyists to make sure that taxicab drivers like the Plaintiffs

named herein would not be able to secure an H tag. While working at DFHV, and after

consulting with Defendant Schaeffer, they urged chairman Chirrpah to resist having a

meeting with Plaintiff Birbo. As alleged herein, these officials also approved applications

of taxicab drivers for H tags who were either affiliated with the Schaeffer family, or who

knew a senior DFHV official. They had adopted a "double standard" when it came to

approving H tag applications, consistent with former Chairman Litton's practice of

bribing H tag applicants, consistent with Plaintiff Birbo's experience. By adopting a

double standard, they have engaged in "arbitrary and capricious" conduct. They steered a

very lucrative contract to Defendant Schaeffer, i.e. a $600,000 contract to provide taxicab

van service in the inner city. They also met regularly with members of the Schaeffer

family and Defendant Schaeffer's lobbyists regarding Defendant Schaeffer's

monopolistic efforts to control the D.C. Taxicab market.

**JURISDICTION AND VENUE**

8. The Sherman Act, 15 U.S.C. § 15: " […] any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent." The Plaintiffs have been injured in their business pursuits as a result of the restraint of trade and monopolistic conduct engaged in by Defendants Schaeffer and DFHV officials.

9. All activities described in this lawsuit have been engaged here in this judicial district.

10. The Sherman Act, 15 U.S.C. §15: Amount of recovery; prejudgment interest. Except as provided in subsection (b), any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws *may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent*, without respect to the amount in controversy, and *shall recover threefold the damages by him sustained*, and the cost of suit, including a reasonable attorney's fee. (Emphasis added). Any and all defendants reside in this district.

11. All activities complained of herein have been engaged in this judicial district. Any and all records that the Plaintiffs will need to establish the merits of this lawsuit are located here in this judicial district, e.g., approvals for an H tag given by DFHV officials to taxicab drivers affiliated with the Schaeffer family. Other relevant records will include emails exchanged between Defendant Schaeffer and members of the D.C. taxicab commission, as well as emails with DFHV officials concerning how they can assist the Schaeffer family in terms of maintaining their monopolistic position in the local taxicab market.

12. All of the witnesses needed to prove the Plaintiffs' case, including the Plaintiffs' intended expert economics witness, are located in this judicial district.

13. The Schaeffer family activities engaged in in this judicial district include: hiring lobbyists to write regulations affecting the Washington D.C. taxicab market, specifically regulations pertaining to the issuance of H tags; leasing out its fleet of cabs; operating two insurance companies; operating an inner city taxi shuttle van business; running a repair shop for cabs; and offering financing to D.C. taxicab owners and operators. They have essentially established a vertically integrated transportation company - thanks in part to the free-wheeling system that they now seek to change by implementing a restricted medallion licensing program.

14. 28 U.S.C. § 1391(c) – venue is proper over a defendant whenever it is subject to personal jurisdiction at the time the action is commenced. Based on the activities engaged in by all defendants here in this judicial district, this Court is the proper venue to hear the claims made herein.

### RELEVANT REGULATIONS AND STATUTES

15. D.C. Taxicab Commission Ch. 10 Sec. 1010.20: "A new DFHV taxicab vehicle license (and corresponding set of DMV "H" tags) shall be issued to each applicant who meets all the following requirements and all other applicable requirements of this title and other applicable laws and regulations of the District, pursuant to an applicable administrative issuance." The major requirement imposed by that regulation is that any taxicab driver who applies for an H tag must have prior thereto turned in an H tag to the D.C. Taxicab Commission. None of the Plaintiffs had done so, a fact known to Defendant Schaeffer,

his lobbyists and DFHV agency officials, so they were automatically disqualified from securing an H tag.

16. D.C. Taxicab Commission, Age of Taxicabs Rule in § 609 of Title 31 of the DCMR, which limits the age of cabs to five years at the time they enter service and seven years total time on the road. The Plaintiffs have the requisite means to comply with this rule.

17. DC Code 45 § 28-4502: Contract, combination, or conspiracy to restrain trade: "Every contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce all or any part of which is within the District of Columbia is declared to be illegal." Defendant Schaeffer with his lobbyists and DFHV officials have conspired during the last twenty years to restrain trade in the D.C. taxicab market.

18. DC Code 45 § 28-4503: Monopolization: "It shall be unlawful for any person to monopolize, attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of trade or commerce, all or any part of which is within the District of Columbia." As alleged herein, D.C. taxicab commission and DFHV agency officials have been conspiring with Defendant Schaeffer and his lobbyists for the last 20 years to assist him in his plan to monopolize the D.C. taxicab market.

19. DC Code 45 § 28-4511(b): Limitations on Actions: An action under section 28-4507 or 28-4508 to recover damages is barred if the action is not commenced within four (4) years after the cause of action accrues, or within one (1) year after the conclusion of any timely action brought by the District of Columbia under section 28-4506, based in whole or in part on any matter complained of in the action for damages under section 28-4507 or 28-4508, whichever is later. Plaintiffs have alleged herein that defendants have tried to and/or monopolized the D.C. taxicab market for at least 20 years and are doing so today.

20. DC Code 45 § 28-4515: Uniformity: It is the intent of the Council of the District of
    Columbia that in construing this chapter, a court of competent jurisdiction may use as a
    guide interpretations given by federal courts to comparable antitrust statutes. The Clayton
    and Sherman Acts are comparable federal anti-trust statutes that local courts, like the
    Superior Court, have relied upon.

21. Sherman Act, 15 U.S.C §2: "Every person who shall monopolize, or attempt to
    monopolize, or combine or conspire with any other person or persons, to monopolize any
    part of the trade or commerce among the several States, or with foreign nations, shall be
    deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not
    exceeding $ 100,000,000 if a corporation, or, if any other person, $ 1,000,000, or by
    imprisonment not exceeding 10 years, or by both said punishments, in the discretion of
    the court."

22. Section 4, 16 of the Clayton Act, 15 U.S.C. §§ 15, 26 permits individuals to bring private
    enforcement actions under §§ 1,2 of the Sherman Act against defendants for alleged
    antitrust violations. Under § 4, "any person who shall be injured in his business or
    property by reason of anything forbidden in the antitrust laws" may sue for treble
    damages. 15 U.S.C. § 15 (plaintiffs are afforded the same right under the D.C. Antitrust
    statute, i.e., suing for treble damages). Section 16 entitles "any person, firm, corporation,
    or association . . . to sue for and have injunctive relief . . . against threatened loss or
    damage by a violation of the antitrust laws".

23. United States Constitution, 14th Amendment. The amendment bars state officials, like
    members of the DC taxicab commission and its successor entity DFHV, from engaging in

any activity *including the unequal treatment of a particular class of citizens and activity which abridges the privilege of working for a living in the District of Columbia*.

24. Constitution of the State of Washington, D.C., <u>10th Amendment</u>: "The State of Washington, D.C. shall not deny to any person the equal protection of the laws." Defendant Schaeffer and DFHV officials have conspired to deny the Plaintiffs the equal protection of the law for approximately ten years as it pertains to the issuance of H tags. DFHV officials and Defendant Schaeffer have conspired to deny the Plaintiffs the equal protection of the law by adopting a double standard when it came to the approval of H tag applicants. If the applicant didn't know a senior DFHV official, or was not working with the Schaeffer family, his application was rejected.

## **RELEVANT FACTS**

25. As discovery will show herein, during the last 20 years, Defendant Schaeffer and his family members have been a dominant force in any and all activities concerning the D.C. Cab market. Defendant Schaeffer in fact today has a full-time office in the DFHV and operates as a favorite insider of DFHV senior officials. As a result, he has secured lucrative contracts ($600,000 worth) to operate an inner city taxicab shuttle business. At this time, he and his siblings own and operate (directly or indirectly) at least 11, perhaps as many as 20, Taxi Cab Companies. More importantly, he has been involved in any major decision made by the DC Taxi Commission, now known as the DFHV. Based on information and belief, and as a direct result of having an office at the DFHV Agency, he can virtually dictate and/or approve or negate any decisions that are announced in the D.C. register by the DFHV concerning the D.C. taxicab market.

26. Approximately six years ago, the Plaintiffs started a dialogue with various officials of the D.C. Taxi Cab Commission (now the DFHV). They desired to know once the moratorium was lifted what they had to do to secure an H tag and a valid license so they could work in the District driving their own cab. During a series of meetings from 2011 up through and including 2015, they were repeatedly told by taxicab commission officials that if they registered with the DFHV and secured the requisite certificate, (see Exhibit A), attended and completed various classes at UDC, they would be entitled to receive an H tag.

27. All of the Plaintiffs named herein attended and completed those courses at UDC, received their requisite certificates from DFHV and paid approximately $800 each in order to complete that course work. They had a specific understanding based on the representations made by D.C. taxicab commission officials that if they completed the coursework at UDC and received the requisite certificate, they would be able to secure the H tag. They didn't realize that Defendant Schaeffer had no intention of allowing this to happen so that his family could continue monopolizing the local taxicab market.

28. They discussed this issue among themselves, and decided that they would agree to attend and complete the course work at UDC, with the specific understanding that once they received their certificates from the DFHV, that was all they would have to do in order to be able to secure an H tag. The plaintiffs named herein all attended and completed that coursework, received their certificates from DFHV and each one paid approximately $800 in fees to do so. As detailed herein, despite the assurances that they had received from various taxi cab commission officials, they subsequently learned that the new regulations (written by one of the Schaeffer family's lobbyists) that the DFHV had

adopted specifically barred them permanently from applying for an H tag, much to their astonishment.

29. In most cases, Plaintiffs filled out the registration forms for H tags online, and were directed to pay for and take the required courses needed to obtain an H tag through the online form. They were also informed that they would eventually receive in the mail the requisite certificate they had applied for. *See* Exhibit A.

30. They have recently confirmed with counsel that indeed the new regulations require them to have turned in an H tag in order to be eligible to secure a new H tag. It now appears futile for them to apply for the H tag, especially since Defendant Schaeffer sits on the advisory council and basically controls the DFHV agency. The second reason it would be futile for them to apply for the H tag is that none of them had ever turned in an H tag to the D.C. Taxi Cab commission previously. They have initiated this litigation with the hope that the DFHV Officials will honor the representations made by the D.C. taxicab commission officials described herein which Plaintiffs specifically relied upon to their detriment.

31. Before filing suit, the Plaintiffs' representative, Gashaw Birbo, tried to set up a meeting with the D.C. taxicab commission Chairman, Mr. Chirappah. In an email, he stated "we have been asking DCTC to issue an H tag for the last three years." *See* Exhibit B. He also mentioned that they have information that the chairman had allowed issuance of H tags to other taxicab drivers working for the Schaeffer company, i.e., classic discriminatory and unequal treatment. He finished the email with "we would like to ask the chairman to issue H tags once and for all." The email is dated in January 2017. With Defendant Schaeffer's

urging, the chairman never responded to this overture, assuming the Plaintiffs would abandon their claim of entitlement to an H tag.

32. The Plaintiff's representative, Mr. Birbo, also tried to set up a meeting with former taxicab commission chairman, Mr. Litton. He asked Mr. Litton for a meeting to discuss the identical issue, i.e., promises made to his group as to how they could secure an H tag. During the meeting Mr. Birbo had with Mr. Litton, Mr. Litton basically tried to bribe him in an effort to prevent Mr. Birbo's group from claiming entitlement to H tag status. He told Mr. Birbo that if he would resign from representing group members, he could get his own, personal H tag. This is the type of criminal conduct that Commission Officials and DFHV officials have engaged in on a routine basis to deter taxicab drivers, like the Plaintiffs named herein, from seeking an H tag. Mr. Birbo rejected Mr. Litton's offer of bribery and decided that he would try to pursue these claims in Court.

33. The taxicab companies in the District of Columbia have been on notice that there was no guarantee that the regulation forbidding the issuance of H tags to those who had not turned in an H tag before would remain in force indefinitely. And they also knew that were it repealed, they would be faced with new competition that would threaten their profits. The D.C. government under these regulations gave them no protection against such an eventuality. Undoubtedly by freeing up entry into the cartelized D.C. taxicab industry, issuance of revised H tag regulations to accommodate the Plaintiffs will reduce the revenues earned by large taxicab empires, like the Schaeffer enterprise, because taxicab drivers like the Plaintiffs named herein will no longer have to pay monopolistic rents to D.C. taxicab kingpins like Defendant Schaeffer.

34. However, that is simply the normal consequence of replacing a cartelized market with a truly competitive market. In any case, issuing new H tags (the relief requested by the Plaintiffs) would be in the public interest. It would mean: (a) more cabs available for taxi cab passengers, (b) generate more revenues for hotel and tourist industries, and (c) it would instill more competition into the taxi cab market. It would likely also result in more tax revenues being generated for the D.C. government through additional licensing fees. The only result that anyone in the D.C. taxicab market would deem to be negative would be a diminution of gross revenues earned by the Schaeffer family and, most importantly, the Schaeffer family's ability to continue to monopolize the market would be impaired.

**THE SCHAEFFER FAMILY FOR AT LEAST TWO DECADES HAS DOMINATED AND MONOPOLIZED THE D.C. TAXICAB INDUSTRY AND BASED ON A NUMBER OF FACTORS, INCLUDING AN EFFECTIVE ENTRY BARRIER, AND THE ADOPTION OF A RESTRICTIVE MEDALLION LICENSING PROGRAM WILL BE DOING SO FOR AT LEAST THE NEXT DECADE**

35. Most if not all of the quotations referenced in this section come from an article published in the Washington Post on November 6. 1994 called "Zoned Out" by Bill Gifford. Defendant Schaeffer is known as the "kingpin" of the DC Taxicab industry and currently works at a "former Chrysler dealership on Benning Road NE. In the cavernous garage bay next door, several more taxicabs levitate and sink on hydraulic hoists." It's the "…headquarters of Equitable Liability Insurance Company, as well as Liberty Cab Association and 11 other taxicab companies owned by Defendant Schaeffer, brothers, David and Andrew, and their father, Maurice. The average passenger has probably never heard of the Schaeffers, but has, no doubt, ridden in one of the taxis they control [directly

or otherwise]…[1]" Jerry Schaeffer is the first to admit that, "We've done very well under the existing system (which regulates the DC taxicab industry)."

36. It is truly a family business, i.e., "Andrew handles insurance, while David keeps an eye on the body shop and rents pagers on the side. Their father retired several years ago and moved to Florida, but missed working, moved back and now comes in three mornings a week." "For two decades he has helped to shape—and been shaped by—the District's taxicab business." He in fact has hired numerous lobbyists including former D.C. councilmember John Ray to write new legislation and regulations at the behest of taxicab commission members and DFHV officials, the goal being to prevent taxicab drivers like Plaintiffs named herein from entering the DC taxicab market. He has testified in front of the D.C. taxicab commission numerous times and submitted statements of position regarding medallions advocating a limitation on the number of taxicab owners. He has interfered with the Plaintiffs when they have attempted to voice their opinions, either at commission hearings or at press conferences held by the mayor. He has encouraged DFHV officials to ignore Plaintiffs claim to entitlement to an H tag.

37. He is in favor of "a limitation on the number of cabs and age requirements." I.e., "It goes without saying *that change would also enhance* the experience of owning a huge cab company, by limiting competition." In terms of establishing a limit on the number of cabs operating in the district, when "asked how many cabs he'd be willing to give up (to make that a reality), he answers frankly: 'None.'" He has an extensive resume in terms of

---

[1] It is very difficult to ascertain the number of cabs owned, operated, leased, shared with other companies, or the subject of a perfected security interest held by the Schaeffer company. It is at least 1,500 and could be as much as 3,000. Only through their discovery efforts will the Plaintiffs be able to determine the precise number of cabs owned, operated, leased, shared with other companies or are the subject of a perfected security interest held by the Schaeffer family or its two insurance companies or its financing affiliate.

developing alliances with DC political figures. For example, "Taped to the wall is a list of D.C. Council members, with stars beside the names Jack Evans, Charlene Drew Jarvis, Frank Smith and the Schaeffers' favorite, John Ray." Mr. Ray is currently working on Medallion legislation which will further cement the monopoly control that the Schaeffer family has over the taxicab market.

38. He admits that, "This system of open entry—coupled with less than vigorous oversight by the taxicab commission, which has only nine cab inspectors—is an economics-textbook example of the free market at work." "Drivers say they like working for the Schaeffers because of the towing services, the spacious garage, swift repairs and easy credit policy." These services are provided courtesy of the classic vertically integrated transportation company owned by the Schaeffer family.

39. "Owner-drivers are also Schaeffer customers. They pay $48 weekly for insurance and dues…" "Radio dispatch service costs another $30 a week." To sum up the situation, "…in the quarter-century since Jerry and his brothers bought Liberty Cab Co., the *Schaeffers have built a vertically integrated transportation company thanks in part to the freewheeling system they now seek to change*" (with the implementation of a restricted medallion system). They lease cabs, finance cab purchases, insure cabs, repair them and provide garages for parking cabs.

40. Under the District's liberal taxi-licensing rules, and with an endless supply of drivers, their fleet grew from one cab to 1,438 by 1983. In addition to Liberty, District and Royal, the Schaeffers currently run cabs under the colors and names of ABC, American, Checker, Comfort, Consolidated, DuPont, Potomac, Premium, Washington, York, and probably at least 10 other taxicab companies. The largest companies are District Cab,

with 442 cabs, and Liberty Cab, with 237; Schaeffer cabs can be distinguished by the phone number (398-0500) painted on each. All of the 1400 cabs are linked together by this common phone number, which gives the Schaeffer family cabs a competitive edge in the market because area hotels give Schaeffer cabs a preference by allowing them to lineup outside for patrons heading to the airport, which are lucrative trips for the driver.

41. First Washington and Equitable Liability are insurance companies owned by the Schaeffer family. "First Washington found no shortage of customers, and it soon became D.C.'s dominant taxicab insurer." "…Many of these costumers have been and are today Schaeffer family tenants, renting space in Schaeffer-owned garages and the lots that they control around town. First Washington and Equitable Liability secure a perfected security interest in the cabs they finance and also extend loans to some of these smaller cab companies." These cabs are not included in the number of cabs owned officially by the Schaeffer family.

42. Taxicab commission records, as of 10 years ago, indicated that the Schaeffer family and their companies have a total of 1,485 vehicles that they directly own. However, these records do not reveal the number of cabs that are indirectly owned, controlled, are subject to an interdirectorate company agreement or are the subject of a perfected security interest held by the Schaeffer family. In other words, except for Schaeffer family supporters, DFHV unknown officials #1 and #2, the D.C. taxicab commission had no idea about the control or monopoly power actually exercised by the Schaeffer family. "…The Schaeffer empire stretches along Benning Road. There's a used car lot, the Liberty garage, a lube shop for taxis and, farther up the road, a body shop, all parts of a complex web of holding companies, affiliates, insurance companies and subsidiaries. One

of the holding companies is called, simply, Cabs Inc." In one way or another, Cabs, Inc. touches every cab driver in Washington, D.C. and every passenger. The other holding companies, affiliates, insurance companies or subsidiaries will only be identified by means of the discovery which this Court allows to be conducted herein.

43. A critic of the Schaeffer family operations, Willie Wright, is of the opinion that the Schaeffer family has always wanted control of the DC taxicab market one way or another going back 15-20 years. He has an office on Georgia Avenue, which is the headquarters of Capital Casualty Insurance Co. For 40 of the past 42 years, Wright—the man who spearheaded the taxicab zone campaign in 1956—has sat on the board of Capitol Cab Cooperative Association, a company that is collectively owned by its drivers, and he also serves as president of Capital Casualty, the insurance company that it owns."

44. As he explains it, the Schaeffer family rationale is that, "'They want these guys to work for them,' he continues. 'That's what they're interested in. If you come work for me, I tell you when to go to work. I can say come back tomorrow, come back next week, come back next year.'" The family wants total control of the market and is a big advocate of the restrictive medallion program which will afford them an unique opportunity to further cement their control of the DC taxicab industry. Medallions will be expensive and not many of the independent taxicab drivers will be able to afford the $5000-$10000 it will cost them to purchase a legal medallion. Defendant Schaeffer will run these cabs with medallions 24 hours a day with three shifts, i.e. he will gross approximately $1.5 million every year simply by owning a single medallion. Restricting H tag issuance essentially creates an alternative medallion system in D.C. based on restricting tags.

45. As Mr. Wright has identified the anti-competitive problem, "[The Schaeffer family] wants control, and they'll set rates when they get control. *That fare's gonna be what they want.* If they think they're not doing enough business with the cabs they've got, they'll park half of them." They know that will outrage the D.C. hotel association, whose members will immediately complain to the Mayor and the City Council. Then, miraculously, the Schaeffer family will come to their rescue, by releasing 500-600 cabs to satisfy the pent up ridership demand.

46. Mr. Wright stated that, "More than 90 percent of Capitol's 661 cabs are owned by their drivers." However, he states, "…*a limitation on the number of [independent] cabs would make it difficult, if not impossible, for owner-drivers to enter the business*." That is exactly what the Plaintiffs are complaining about herein. In economics parlance, that is called an "entry barrier." That is why Mr. Wright is afraid of the power that the Schaeffer family wields in the taxicab market and which will enable them to eventually drive individual entrepreneurs, like his members, out of business. That would of course further solidify the Schaeffers' monopoly power and dominance in the DC taxicab market.[2] As a result, fares would immediately be marked up to take advantage of that monopoly position and the number of cabs will be reduced – classic restraint of trade or monopoly

---

[2] As the Schaefer Family knows, "restrictions on entry [can] drive up the price of operating a legitimate taxicab to obscene levels, in some cases. Under New York's medallion system, the number of taxicabs is fixed at 12,187, creating a scarcity that makes medallions worth approximately $150,000 to $250,000 . . . many of the medallions in New York [of course] have been held by corporations that lease them to taxicab drivers. When the value of the medallion is high, so too is the rent the driver must pay to drive the taxicab. The more rent drivers have to pay, the harder that have to work—and for longer hours. Drivers may be forced to drive without rest in order to make the weekly rent payments." Lee. A. Harris, *NOTE: Taxicab Economics: The Freedom to Contract for a Ride*, 1 Geo. J.L. & Pub. Pol'y 195.

tactics. The big loser, of course, is the DC consumer who relies upon taxicabs for local transportation needs.

47. The Schaeffer family's intent to monopolize the DC taxicab market became quite evident when there was a movement to introduce legislation concerning the issuance of medallions. According to one reporter, who spoke with individuals very knowledgeable about the taxi industry, that "there is one driving force behind the bill, Jerry Schaeffer, the district's taxi king, who owns more than a dozen cab companies, sells cabs insurance, and repairs cabs." See "Taxi Cab Confessions," Allen Suderman, May 25, 2011.

48. It has always been an open secret that Defendant Schaeffer had hired former council member Mr. Ray to draft a medallion bill and he is looking to use the medallion legislation to snatch up as big a chunk of the taxi industry as possible. Once the medallion system is adopted, the Schaeffer family will receive additional monopolistic rents and force their cab drivers to log more hours to pay for those rents. As Mohammad Momen, owner of the Silver Cab Taxi Company and one of the fleet owners a part of Ray's coalition, said "I don't know why the newspaper guy is asking me, everybody knows it's a Jerry Schaeffer bill." The fact that the D.C. council is willing to once more take up the topic of medallions, despite an FBI corruption investigation into the last legislative effort to do so simply means that the interests that dominated the taxicab industry, like the Schaeffer family, still have a lot of clout and are looking to further enhance their market share and dominant position.

49. The Schaeffer family members want the D.C. market to themselves and to other kingpins of the local industry. The reason is, that if they allowed the issuance of more H-tags, that would dilute their monopoly power and prevent them from extracting from cab drivers

like the Plaintiffs exorbitant monopoly rents. The reality is that most cab drivers like the

Plaintiffs named herein don't have a viable alternative other than renting from Schaeffer

family companies or affiliates. Based on the solid support that they have received from

taxi cab commission officials for over 20 years and have received recently from DFHV,

for example the award of a $600,000 exclusive contract, there is a dangerous and very

real possibility that total monopolization of the market by the Schaeffer family will be

complete shortly.

## FIRST CAUSE OF ACTION PROMISSORY ESTOPPEL AGAINST DEFENDANT DEPARTMENT OF FOR-HIRE VEHICLES

50. Plaintiffs hereby repeat and re-allege paragraphs 1-49 as if fully recited herein

51. On or about September 15, 2015, the D.C. Taxi commission formally announced that

there would be a new path for taxicab drivers to secure an H tag. They further announced

that in order to secure the H tag, applicants would have to perform a number of acts

including attending taxicab etiquette school (at UDC), passing certain tests and securing a

valid certificate from the DFHV.

52. As a result of the publication of this notice, the Plaintiffs were very interested in

performing the acts that would be necessary to secure the H tag. An employee of the taxi

commission in fact paid a visit to the classroom where the Plaintiffs were studying and

specifically encouraged them to successfully complete the exams in order to secure their

H tag. This turned out to be a total misrepresentation in terms of the availability of H

tags, primarily due to Defendant Schaeffer's criminal anti-trust conduct (see Sherman

Act).

53. Unbeknownst to the Plaintiffs, the D.C. Taxi Cab Commission officials, (now the DFHV

officials), had already decided to shut out of the D.C. market any and all cab drivers who

had not previously turned in a valid H tag, as per Defendant Schaeffer's requests. In fact, their intent was spelled out in September 2015, i.e., "the department's intent in promulgating these regulations is to provide new vehicle licenses *only to those operators who surrender their tags for a bona fide reason in compliance with the regulations*." They further announced what their real intention was "not to create an unlimited avenue for licenses that would flood the market with new taxi cabs." Defendant Schaeffer had made similar pronouncements over the years, warning the commission about new competition.

54. Had it been disclosed to the Plaintiffs on or before they applied for testing exams and enrollment in schools (UDC) recommended by the Commission officials, that the commission and the DFHV agency had no intention to afford them an opportunity to secure an H tag, they never would have spent approximately $800 each in order to attend the schools, go through the testing process and receive a certificate from the DFHV. As a result of the Commission officials making these affirmative representations that the Plaintiffs could secure an H tag, they reasonably expected that they would be independent taxicab drivers starting in 2015. As a result of not securing an H tag, each of the Plaintiffs lost a total of $12,000 dollars in the years 2015-2017. But for the affirmative representations made to the Plaintiffs as described herein, the Plaintiffs would not have been injured in the sum of $4,000 each year, which amount is the lost income they would have earned had they received their H tag in the year 2015. Securing the requisite certificate from the DFHV and a valid H tag meant that they would be an independent cab owner and each would have earned an additional $4,000 every year that they operated their cab with the H tag.

55. If the Plaintiffs had received their H tag in year 2015, they each could have earned a total of $12,000 in the years 2015 through 2017.

WHEREFORE, Plaintiffs hereby request entry of judgment against the DFHV, the successor entity to the D.C. taxicab commission, based on the misrepresentations made to the Plaintiffs, which resulted in total damages of $217,600. That sum is based on the outlay of $800 and the lost income which they incurred in years 2015, 2016, and 2016. Plaintiffs also ask for an award of appropriate attorney fees.

## SECOND CAUSE OF ACTION: FRAUDULENT MISREPRESNTATION AGAINST DEFENDANT DEPARTMENT OF FOR-HIRE VEHICLES

56. Plaintiffs hereby repeat and allege paragraphs 1-55 as if fully recited herein.

57. As has been detailed in the first cause of action, Taxi Cab Commission Officials and DFHVA Officials purposely made misrepresentations to the Plaintiffs, which resulted in them believing that if they enrolled in school, passed the requisite tests and secured a valid certificate from the DFHV that they would receive an H tag. Unbeknown to the Plaintiffs, at the time these fraudulent misrepresentations were made, the Taxi Cab Commission and its successor entity DFHV had no intention of allowing the Plaintiffs the opportunity to secure an H tag. Defendant Schaeffer was instrumental in convincing these officials to shutout the Plaintiffs from the D.C. taxicab market.

58. At all relevant times, the individuals who made these misrepresentations [taxi cab commission employees] and Defendant Schaeffer knew that the Plaintiffs would not be able to secure an H tag because of regulations that were being drafted to ensure that was the case. The regulations (initially drafted by one of Defendant Schaeffer's lobbyists), when published, barred anyone from receiving an H tag if he had not already turned in

one. That meant that all of the Plaintiffs named herein never had a real opportunity to secure an H tag.

59. When individuals make representations that they know at the time are false, they can be sued for fraudulent misrepresentation. At all relevant times when these employees were making these misrepresentations, they knew that the Plaintiffs would never secure an opportunity to get an H tag.

WHEREFORE, Plaintiffs, based on the allegations made in the first cause of action, hereby request entry of judgment in the amount of $217,600, which is what their monetary damages are as a result of paying for the school, paying for the test exam, and the income lost from years 2015, 2016, and 2017. The judgment should be entered against the Taxi Cab Commission's successor, i.e. Defendant DFHV, for allowing its officials to make deceitful statements about the Plaintiffs' ability to secure H tags. The Court should consider an appropriate award of Attorney Fees.

### THIRD CAUSE OF ACTION: NEGLIGENT SUPERVISION AGAINST DC TAXICAB COMMISSION AND ITS SUCCESSOR ENTITY THE DEPARTMENT OF FOR HIRE VEHICLES

60. Plaintiffs hereby repeat and re-allege paragraphs 1-59 as if fully recited herein.

61. During the years 2012 through 2016, various officials working for the D.C. taxicab commission and the DFHV agency made negligent representations to the Plaintiffs named herein. The reason why these officials were able to make negligent representations to the Plaintiffs was that they were not properly supervised by higher-ups in the DFHV agency. These senior officials made no attempt to monitor the nature of representations made to the Plaintiffs. Had they been properly supervised, they never would have made

those representations concerning a very important matter, i.e. a taxicab driver's
entitlement to H tags.

62. The most important representation was that, assuming the Plaintiffs would pass such
tests, pay $800 in fees and secure a valid certificate from the DFHV, they would be
entitled to receive an H tag. The Plaintiffs relied on that representation and proceeded to
each spend approximately $800 to be in a position to secure their H tag. As it turned out
based upon new regulations drafted by one of Defendant Schaeffer's lobbyists, the
Plaintiffs were not able to secure an H tag. As a result, each of the Plaintiffs named
herein have been damaged in an amount not less than $217,600. (The Plaintiffs lost a
total of approximately $13,000 in expenses, and each driver approximately $4,000 in lost
income per year).

WHEREFORE, Plaintiffs hereby request entry of judgment for the sum of $217,600 against
defendant Department of For Hire Vehicles Agency.

### FOURTH CAUSE OF ACTION AGAINST DEFENDANTS SCHAEFFER AND THE DEPARTMENT OF FOR-HIRE VEHICLES BASED ON THE ABRIDGEMENT OF THE PRIVILEGE OF WORKING FOR A LIVING HERE IN THE DISTRICT OF COLUMBIA AS INDEPENDENT CAB DRIVERS

63. Plaintiffs repeat and re-allege paragraphs 1-62 as if fully recited herein.

64. As this Court knows, the 14th Amendment to the U.S. Constitution bars any state official
from abridging the privileges of U.S. citizens in any manner. See Relevant Statutes and
Regulations section. All Plaintiffs are capable of purchasing their own vehicles, driving
cab vehicles, and securing the insurance to cover that, and are desirous of securing an H
tag in order to make a living here in the District as an independent taxicab owner. The
sole alternative being paying exorbitant monopolistic rents to the Schaeffer family.

65. As already detailed herein, the D.C. Taxi Commission and Defendant Schaeffer made a conscious commitment to join in an illegal conspiracy, the goal of which was to deprive Plaintiffs of an opportunity to work in the District of Columbia as independent cab drivers. The opportunity to work granted to all U.S. Citizens is a privilege that these Defendants have abridged, and thus they have violated the 14th Amendment. Defendant Schaeffer has aided and abetted the violation of the 14th Amendment by seeing that the new regulations issued by the DFHV permanently barred the Plaintiffs from operating in the DC taxicab market.

66. Unless the Plaintiffs are afforded the opportunity to secure an H tag, they will lose thousands of dollars during the twenty years in terms of lost income (at least $4,000 a year each). Because of the regulations prepared by Defendant Schaeffer's lobbyists and adopted by the DFHV agency, Plaintiffs have been purposely shut out of this jurisdiction's taxicab marketplace. The reason being that Defendant Schaeffer and the D.C. Taxi Cab Commission officials did not want to expand the universe of D.C. taxi drivers, and therefore drafted up stringent requirements that an applicant for an H tag would have to satisfy. The result was that since none of the Plaintiffs had previously turned in an H tag to the taxi commission, they could not apply for an H tag even though they had received a valid certificate from the DFHV. At all relevant times herein, Defendants knew that none of these Plaintiffs had indeed turned in an H tag to the commission, which would necessarily preclude them from securing an H tag.

67. As this Court knows the 14th Amendment also provides that all citizens will be treated equally, and that no State official like members of the D.C. taxicab commission or the DFHV Agency can deny them that right. The Defendants have treated the class of

Plaintiffs named herein (and other drivers) in an unequal manner by making sure they could not apply for and secure an H tag even if they had secured a valid certificate from the DFHV. They have thus violated the 14th Amendment to the U.S. Constitution.

68. The relief that Plaintiffs seek under this cause of action is an order from this Court which requires that the DFHV agency (or the appropriate agency) award the Plaintiffs an opportunity to secure an H tag. If they secure an H tag, they will each be able to avoid a significant loss of revenue over the next 20 years, i.e. at least $80,000.

69. All of the Plaintiffs are relatively young and in good health, so they are sure that they would be able to drive a cab for at least another 20 years. In that time span, they would have lost a total of approximately between $1,360,000 and $1,700,000 in wages as a direct result of not being able to secure an H tag.

WHEREFORE, Plaintiffs hereby request that the Court issue an order directed to the DFHV Agency to award them H tags and thus enable them to mitigate their damages.

### FIFTH CAUSE OF ACTION: ATTEMPT TO MONPOLIZE AND/OR ENGAGE IN RESTRAINT OF TRADE BASED ON DC CODE CHAPTER 45 § 28-4503 AGAINST DEFENDANTS DEPARTMENT OF FOR-HIRE VEHICLES AND SCHAEFFER

70. Plaintiffs repeat and re-allege paragraphs 1-69 as if fully recited herein.

71. As this Court knows, every contract or combination in the form of a trust or otherwise, or a conspiracy in restraint of trade all or any part of which is committed in the District of Columbia, is declared to be illegal. D.C. §28-4502.

72. Any Plaintiff alleging an illegal conspiracy under the D.C. antitrust legislation must show that: a) each Defendant made a conscious commitment to an illegal conspiracy; b) each Defendant took acts in furtherance of that conspiracy, and c) Plaintiffs were injured as a result. Plaintiffs must also allege that this conspiracy was the proximate cause of the

antitrust injury described in Plaintiff's complaint. *See* <u>Johnson v. Greater SE Community</u>, 903 F. Supp. 140 (D.D.C. 1995). As already detailed herein, all of the Defendants named herein made a conscious commitment to join the illegal conspiracy described herein. The goals of that conspiracy were: a) to deprive Plaintiffs of an opportunity to work in the District of Columbia as independent taxi cab owners; and b) In the case of the Schaeffer family, maintain their monopoly position in the D.C. taxicab market.

73. As repeatedly alleged herein, they were told if they took certain exams, paid appropriate fees and secured a valid certificate from the DFHV they would be able to secure an H tag. After the regulations were completed and then published in the D.C. Register, it became clear that the Plaintiffs have purposefully been shut out of this jurisdiction's taxicab marketplace because none of them ever had an H tag to turn in. Based on the definition contained in Taxi Cab Regulations Section 10, Chapter 10, any applicant for an H tag has to make a showing that indeed he had turned in an H tag to the taxi commission for whatever reason. That was Defendant Schaeffer's strategy and it worked, i.e., the regulations pertaining to H tags were written as requested by Defendant Schaeffer.

74. Defendant Schaeffer made a conscious commitment to this conspiracy as well. He has a number of cab companies (anywhere from 11 to 20) to protect and he successfully colluded with taxicab commission members and DFHV officials to enact a strict definition which would make it impossible for Plaintiffs to secure an H tag, even if they had received a valid certificate from the DFHV. Being unable to secure an H tag, has resulted in a dramatic loss of revenue for the Plaintiffs. They would have earned on average in 2015-2016 approximately $1,500,000 in the District of Columbia had they had a valid H tag. Without a valid H tag, they simply cannot and will not make a decent living

in the future operating in the District of Columbia being forced to pay exorbitant, monopolistic rents to the Schaeffer family.

75. The anticompetitive effects flowing from this illegal conspiracy and restraint of trade outweigh the pro-competitive effects for which the restraint is reasonably necessary consistent with classic antitrust and restraint of trade principles. One of the pro-competitive effects is consistent with the mission statement of the DFHV, i.e., providing tourists and D.C. citizens with affordable transportation alternatives. The only financial injury that will result as a consequence of issuing new H tags to the Plaintiffs will be a diminution in net revenue earned by the Schaeffer family.

76. This antitrust claim specifically includes injury to competition (higher fares for D.C. citizens and tourists) and an agreement among individuals who were and are competitors (other members of the cartel) in the D.C. taxicab market. As a result of being denied H tags, these taxi drivers cannot compete in the D.C. market driving their own vehicles with legitimate H tags. As a result of engaging in this conspiracy and restraint of trade, as discovery will show herein, Defendant Schaffer has made windfall profits and will continue to do so as a result of the monopoly power he exercises in this jurisdiction and the exorbitant, monopolistic rents he has received from taxicab drivers like the Plaintiffs.

77. As has been alleged in the section entitled "Statement of Facts," Defendant Schaeffer has been repeatedly meeting with DFHV and Taxi Cab Commission Officials in the last 10-15 years. He wanted to insure that his dominant position in the relevant market was secure, the relevant market being Washington D.C. Cab Driver industry. He informed these commission members that the biggest threat to dilution of his monopoly position was to award H tags to Taxi Cab drivers like the Plaintiffs named herein.

78. Schaeffer was concerned that there was some support at the D.C. Council level, and within the D.C. Taxi Commission to grant H tags to those cab drivers who had been told they could secure H tags it they passed taxicab school and took the appropriate tests given at UDC.

79. In order to blunt the effectiveness of those individuals who desired to set up a program so that taxi cab drivers like the Plaintiffs could secure an H tag license, Defendant Schaeffer informed taxi cab commission members and DFHV officials how devastating that would be in terms of destroying his monopoly power over the market. He also told them that would disrupt his strategy, i.e., implementing a restrictive medallion licensing program.

80. He eventually succeeded in this endeavor, because in September 2016, the DFHV published new regulations in the D.C. register. Those new regulations meant that none of the Plaintiffs would ever be granted the right to secure an H tag, no matter what courses they had completed at UDC, and even if they had received valid certificates from the DFHV.

81. Defendant Schaeffer wanted to make sure his market share wouldn't be diminished, and he came up with a barrier entry strategy. The barrier entry strategy meant that only those taxi drivers who had actually turned in H tags were able to legally secure a new H tag. Defendant Schaeffer knew of course that these plaintiffs had never turned in an H tag, and therefore if the regulations were written in a certain way, they could never do so. So one of his lobbyists, e.g., John Ray helped DFHV officials to promulgate new regulations which meant that none of the Plaintiffs would ever secure an H tag. As long as this group of taxi cab drivers were not given H tags, Mr. Schaefer's dominance in the market would be assured. At all relevant times, he had the specific intent to monopolize the relevant

D.C. taxicab market and the DFHV Agency aided and abetted him in that endeavor. The result, he continues to receive monopolistic rents from D.C. cab drivers.

82. This attempt to monopolize the market constitutes restraint of trade by making sure there were entry barriers into the market which the Plaintiffs could not satisfy. As a result, Defendant Schaeffer has a thriving business today, owns at least 12 cab companies (perhaps as many as 20), and rests assured that his monopoly position in the market will not be disturbed by anyone, including the Plaintiffs named herein based on the new regulations. That activity constitutes restraint of trade and also an attempt to monopolize the D.C. taxi cab market. As a result of that conduct, each Plaintiff will lose approximately $4,000 and $5,000 a year for the next 17 years, for a total of $68,000 and $85,000. In total, the Plaintiffs stand to lose between $1,360,000 and $1,700,000 in total wages. Based on D.C. Code § 28-4503, Plaintiffs are entitled to an award of treble damages, and in this case in the amount is between $3,468,000 and $4,080,000.

WHEREFORE the Plaintiffs herein request that the Court enter judgment of somewhere between $3,468,000 and $4,080,000 against the two unknown DFHV Agency officials, and against Defendant Schaefer for their combined intent to monopolize the D.C. taxi cab market.

### SIXTH CAUSE OF ACTION:
### CONSPIRACY TO MONOPOLIZE THE LOCAL D.C. TAXICAB MARKET AGAINST DEFENDANT SCHAEFFER AND THE DEPARTMENT OF FOR-HIRE VEHICLES (DFHV) IN VIOLATION OF THE D.C. CODE § 28-4503

83. Plaintiffs hereby repeat and re-allege paragraphs 1-82 as if fully recited herein.

84. As this Court probably knows, it is a crime under the Sherman Act to monopolize a market or indeed create a monopoly in a market. Section two specifically recites, "*Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons*, to monopolize any part of the trade or commerce among the

34

several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court." There are similar provisions in the D.C. Code.

85. As alleged herein (see section on Defendant Schaeffer's anti trust activities), Defendant Schaeffer has played a dominant manipulative role in the D.C. taxicab industry for at least 15 years. In fact he or family members own approximately 13 taxicab companies, not cabs, cab companies. He even has his own office at the DFHV Agency, and has on several occasions secured lucrative contracts from that agency to perform various transportation services in the D.C. Taxi Cab market. For example in 2016, he secured a $600,000 award to operate an inner D.C. city taxicab shuttle van company. He has worked with members of the D.C. Taxicab Commission as well as its successor entity (DFHV) to formulate and publicize new rules and regulations governing the rights of taxicab drivers in this market. Defendant Schaeffer, with the assistance of members of the taxi commission and DFHV officials, prepared and submitted significant provisions, which now govern the issuance of an H tag and effectively bar the Plaintiffs from operating in the D.C. taxicab market as independent cab drivers.

86. Motivated by keeping individuals, like the Plaintiffs named herein, from securing an H tag, the regulations were revised by one of Defendant Schaeffer's lobbyists to ensure that the Plaintiffs would never be able to secure an H tag. The way the Defendants did it was to write in a provision that conditioned the issuance of an H tag upon the fact that the individual applicant had turned in an H tag before to the commission. At all relevant

times, Defendant Schaeffer knew that none of the Plaintiffs had turned in an H tag and therefore could not secure a new H tag under the new regulations. As a result of that provision, written by one of Defendant Schaeffer's lobbyists, the regulations permanently bar them from competing in the D.C. taxicab market as independent taxi cab drivers.

87. As already alleged herein, Plaintiffs could have earned on an average approximately $1,500,000 over the course of the next 17 years if they were independent taxicab owners operating under a valid H tag. Defendant Schaeffer and DFHV Agency officials' strategy was to make sure that no new independent cab drivers like the Plaintiffs named herein would be able to compete in this market. As a result, they have been damaged in the amount of somewhere between $1,360,000 and $1,700,000, which when tripled becomes somewhere between $3,468,000 and $4,080,000.

WHEREFORE, Plaintiffs hereby request the entry of a judgment in the amount of somewhere between $3,468,000 and $4,080,000, plus an award of attorney's fees against Defendants Schaeffer and unknown officials #1 and #2 who are employed by the DFHV as a result of participating in a conspiracy to create a monopoly in the D.C. Taxicab market and in the process deprive the Plaintiffs of the ability to operate in the taxicab market as independent cab drivers/owners.

### Jury Demand

Plaintiffs hereby request a jury trial.


_____ /s/

Martin F. McMahon, Esq.
D.C. Bar Number: 196642
Martin F. McMahon & Associates
1150 Connecticut Avenue, N.W., Suite 900
Washington, D.C. 20036
(202) 862 – 4343
mm@martinmcmahonlaw.com

Attorney for the Plaintiffs