# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MISGANAW ALEMU, *et al.*,                 :
                                          :
      Plaintiffs,                       :        Civil Action No.:    17-cv-1904 (RC)
                                          :
      v.                                :        Re Document Nos.:   9, 15, 18
                                          :
DEPARTMENT OF FOR-HIRE                     :
VEHICLES, *et al.*,                       :
                                          :
      Defendants.                       :

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTIONS TO DISMISS

## I. INTRODUCTION

This case involves a group of individuals who believe that they have been defrauded by a government institution established, in part, to protect their interests; an institution that they claim has been corrupted by private interests opposed to their own. Plaintiffs are a group of taxicab drivers who have brought several common law, District of Columbia law, and federal law claims against a District of Columbia regulatory agency, the Department of For-Hire Vehicles ("DFHV"), and Jeffrey Schaeffer, an owner of various taxi-related companies (together, "Defendants"). Plaintiffs allege that DFHV misrepresented important taxicab licensing information and then worked alongside Mr. Schaeffer to draft and implement new licensing regulations which effectively preclude them from obtaining licenses to operate their own taxicabs. Now before the Court are DFHV's motions to dismiss for insufficient service of process and lack of subject-matter jurisdiction, and both Defendants' motions to dismiss for failure to state a claim for relief. For the reasons stated below, the Court grants both motions to dismiss for failure to state a claim.

## II.  FACTUAL BACKGROUND

### A.  The DFHV

Plaintiffs' claims arise from their inability to obtain "H-Tag" permits and, consequently, their inability to own and operate taxicabs.  An "H-Tag" is a license necessary to operate a public for-hire vehicle in the District of Columbia.  *See* D.C. Code § 47-2829 (2018); Mem. P. & A. Supp. Def. Dep't For-Hire Vehicles Mot. Dismiss ("DFHV Mem.") Ex. 1 ("H-Tag Report") at 1, ECF No. 18-3.[1]  DFHV determines the criteria for H-Tag eligibility.  *Id.*[2]

DFHV is "a subordinate agency within the executive branch of the District government with exclusive authority for intrastate regulation of the public-vehicle-for-hire industry."  D.C. Code § 50-301.04 (2018).  It is led by a Director who is appointed by the Mayor with the advice and consent of the District of Columbia Council.  D.C. Code § 50-301.05.  "The DFHV is charged with the continuance, further development, and improvement of the vehicle-for-hire industry within the District, and for the overall regulation of limousines, sedans, taxicabs, taxicab

---

[1] The H-Tag Report is an official government report commissioned by the District of Columbia Taxicab Commission—the DFHV's predecessor—and it is available on DFHV's website.  *See* Department of For-Hire Vehicles, *The H-Tag Report*, https://dfhv.dc.gov/publication/h-tag-report.  Accordingly, the Court may take judicial notice of the H-Tag Report without converting DFHV's motion to dismiss to a motion for summary judgment.  *See Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016) (taking judicial notice of "facts that the Federal Election Commission has posted on the web"); *Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*, 930 F. Supp. 2d 234, 237 n.3 (D.D.C. 2013) (stating that a court may take judicial notice of public records at the motion to dismiss stage) (citing *Direct Supply, Inc. v. Specialty Hosps. of Am., LLC*, 878 F. Supp. 2d 13, 20 n.10 (D.D.C. 2012); *George v. Bank of Am. N.A.*, 821 F. Supp. 2d 299, 301 n. 5 (D.D.C. 2011)).

[2] For a vehicle to operate as a taxicab in the District of Columbia, the vehicle must receive approval from two agencies.  First, the vehicle must meet the DFHV's vehicle-for-hire licensing requirements promulgated under D.C. Code § 47-2829(d).  Second, the vehicle must receive a license plate tag from the District of Columbia Department of Motor Vehicles ("DMV") indicating that it has been licensed as a vehicle-for-hire.  H-Tag Report at 1.  The Court will refer to the DFHV's license and the DMV's plate tag collectively as an "H-Tag."  Moreover, to operate a licensed taxicab, an individual must receive a DFHV operator's license.  D.C. Code § 47-2829(e)(1).  Plaintiffs have operator's licenses and are seeking H-Tags.

companies, taxicab fleets, and taxicab associations." D.C. Code § 50-301.07(a). Among other powers, it has the authority to establish "criteria, standards, and requirements for the licensing of public vehicle-for-hire owners, operators, companies, associations, and fleets." D.C. Code § 50-301.07(c)(2).

### B. Jeffrey Schaeffer's Involvement in the Taxicab Market

Mr. Schaeffer allegedly owns several taxicab companies, insurance companies, and a car repair shop in the District of Columbia, has a personal office in the same building as DFHV,[3] and has held a large share of the District's taxicab market for more than 20 years. Compl. ¶¶ 5, 25, ECF No. 1. Plaintiffs assert that Mr. Schaeffer's market share and proximity to DFHV allow him to influence DFHV's actions; specifically, its implementation of H-Tag regulations. *Id.* ¶¶ 5–6, 25. Mr. Schaeffer allegedly has a history of lobbying for favorable taxicab regulations to maintain his grip on the taxicab market. *See id.* ¶¶ 7, 13, 36.

### C. H-Tag Regulation

Before 2009, the District of Columbia operated on an open-taxicab-licensing system, with no limit on the number of H-Tags that could be issued. *See* H-Tag Report at 3. In 2009, the District of Columbia Taxicab Commission ("DCTC" or the "Commission"), DFHV's predecessor, placed a moratorium on H-Tags, effectively halting any new issuances to individual taxicab drivers and taxicab companies.[4] *See* Compl. ¶ 26, ECF No. 1; H-Tag Report at 4. While

---

[3] Mr. Schaeffer vehemently disputes this claim. *See* Mem. P. & A. Supp. Mot. Def. Jeffrey Schaeffer Dismiss Compl. ("Schaeffer Mem.") at 26 (asserting that the claim was made "without one scintilla of any evidence" and that it is "sanctionable under Rule 11."), ECF No. 9-2.

[4] The events at issue in this matter occurred when the DCTC served as the District of Columbia's taxicab regulatory agency. As such, Plaintiffs' allegations refer to the DCTC instead of DFHV. However, for simplicity's sake, the Court will hereafter refer to both organizations as DFHV.

the moratorium was in effect, Plaintiffs—taxicab drivers in the District of Columbia who leased their cabs from H-Tag holders—inquired about the steps that would be necessary to obtain their own H-Tags once DFHV decided to lift the moratorium. Compl. ¶ 26. During a series of meetings from 2011 to 2015, DFHV officials allegedly informed Plaintiffs that they would be eligible for H-Tags so long as they registered with DFHV, successfully completed a "Taxicab Operator's Course," and earned the requisite certificate of completion. *Id.* Accordingly, Plaintiffs each registered with DFHV as for-hire candidates and paid $800 to attend and complete the course.[5] *Id.* ¶¶ 26–27; *see* Certificate of Completion, ECF No. 1-2.

In September 2016, DFHV lifted the moratorium, but contrary to its alleged representations to Plaintiffs it adopted a regulation that gave priority licensing only to previous H-Tag holders, effectively barring Plaintiffs from obtaining H-Tags. *See* Compl. ¶¶ 28, 30, 66; D.C. Mun. Regs. tit. 31, § 1010.20 (2017). The current H-Tag regulation requires Plaintiffs to have previously surrendered H-Tags to DFHV—which Plaintiffs have not done because they never owned H-Tags—or to register a wheelchair-accessible or electric vehicle—vehicle types which Plaintiffs allegedly do not own, or claim are impractical. *See* Compl. ¶ 15; D.C. Mun. Regs. tit. 31, § 1010.20 (2017).

In late-2017, Plaintiffs filed the complaint initiating this action. Plaintiffs allege that, under the semblance of the H-Tag regulation, DFHV and Mr. Schaeffer conspired and attempted to monopolize the District of Columbia's taxicab market. *See generally* Compl. Plaintiffs argue that this alleged anticompetitive conduct was made possible by Mr. Schaeffer's significant market share in the District's taxicab industry and his lobbyist's efforts to advocate for favorable

---

[5] Plaintiffs' allegation that they registered with DFHV as for-hire candidates is not numbered by paragraph but appears on page four in their complaint.

taxicab regulations. *See id.* ¶¶ 5, 48, 81. Plaintiffs also argue that DFHV officials

misrepresented the H-Tag eligibility requirements to Plaintiffs, knowing that Plaintiffs would be

unable to obtain H-Tags once the new regulations were issued. *Id.* ¶ 58. They assert six claims

against DFHV: (1) promissory estoppel, (2) fraudulent misrepresentation, (3) negligent

supervision, (4) equal protection, (5) attempted monopolization, and (6) conspiracy to

monopolize. *See generally id.* Plaintiffs assert the equal protection and monopolization claims

against Mr. Schaeffer as well. *See generally id.*

Before the Court are DFHV's ripe motions to dismiss pursuant to Federal Rules of Civil

Procedure 12(b)(1), 12(b)(5), and 12(b)(6), and Mr. Schaeffer's ripe motion to dismiss pursuant

to Rule 12(b)(6). DFHV argues that (1) the Court lacks standing because Plaintiffs fail to allege

injury in fact; and (2) Plaintiffs' claims are unripe because they have neither applied for nor been

denied H-Tags. *See* DFHV Mem. at 5–7, ECF No. 18-1. Alternatively, DFHV argues that

Plaintiffs' complaint is factually and legally insufficient, and therefore that it fails to state a claim

upon which the Court may grant relief. *See generally* DFHV Mem. Mr. Schaeffer also argues

that Plaintiffs' allegations are factually and legally insufficient. *See generally* Schaeffer Mem.

As discussed below, the Court denies DFHV's motion to dismiss for lack of subject-matter

jurisdiction but grants both Defendants' motions to dismiss for failure to state a claim for relief.

### III.  LEGAL STANDARDS

#### A.  Rule 12(b)(1)

A motion to dismiss for lack of standing and ripeness constitutes a motion under Rule

12(b)(1) of the Federal Rules of Civil Procedure, because both defects are "defects in subject-

matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). "Because subject-

matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule

12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350).    Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Accordingly, "[a]s a court of limited jurisdiction," this Court "begin[s], and end[s], with an examination of [its] jurisdiction." *Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004).

It is the plaintiff's burden to establish that the court has subject-matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  In determining whether the plaintiff has met this burden, a court must accept "the allegations of the complaint as true," *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015), and "construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (internal quotation marks omitted). However, "the plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police*, 185 F. Supp. 2d at 13–14 (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350) (internal quotation marks omitted).

## B.  Rule 12(b)(6)[6]

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Brewer v. District of Columbia*, 891 F. Supp. 2d 126, 130 (D.D.C. 2012).  A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor.  *See, e.g., United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555–56 (citations and footnote omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.

---

[6] Although Mr. Schaeffer attaches several documents outside the pleadings to his motion to dismiss, the Court need not convert that motion to one for summary judgment because the Court relies only on the pleadings—and on certain public records of which the Court has taken judicial notice—to determine the sufficiency of Plaintiffs' allegations.  *See Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 98 (D.D.C. 2002) (explaining that a court may evaluate a motion as a motion to dismiss, not a motion for summary judgment, when the court need not rely on any materials outside the pleadings attached to that motion).

A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

Furthermore, when a plaintiff alleges fraudulent misrepresentation, as Plaintiffs do here, the complaint must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see, e.g., Jefferson v. Collins*, 905 F. Supp. 2d 269, 282 (D.D.C. 2012); *3D Global Sols., Inc. v. MVM, Inc.*, 552 F. Supp. 2d 1, 7–9 (D.D.C. 2008); *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 254 (D.D.C. 2004). This heightened pleading standard requires a complaint to "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (internal quotation marks omitted) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)). The plaintiff must also "identify individuals allegedly involved in the fraud." *United States ex rel. Williams*, 389 F.3d at 1256.

## IV. ANALYSIS

As noted above, Defendants move to dismiss the complaint on several grounds. DFHV contends that the Court lacks subject-matter jurisdiction because Plaintiffs fail to plead any injury in fact, and because the issues raised are unripe for judicial review, given that Plaintiffs have neither applied for nor been denied H-Tags. *See* DFHV Mem. at 5–7. Alternatively, DFHV argues that Plaintiffs fail to state a claim because their allegations are conclusory in nature. *See id.* at 8–13. DFHV further argues that Plaintiffs' antitrust claims fail because they do not establish antitrust standing and because DFHV is immune to antitrust liability. *See id.* at 15–20. Mr. Schaeffer contends that Plaintiffs fail to properly allege several elements of their

antitrust claims, that those claims fall outside the statute of limitations, and that he is also immune to antitrust liability. *See generally* Schaeffer Mem. Addressing each argument in turn, beginning with DFHV's jurisdictional arguments, the Court concludes that, although it has jurisdiction over this action, Plaintiffs' allegations fail to state a claim upon which relief can be granted. Accordingly, Defendants' motions to dismiss are granted.[7]

### A. Standing & Ripeness

The Court first disposes of DFHV's motion to dismiss for lack of subject-matter jurisdiction. "Article III of the Constitution limits the jurisdiction of federal courts to 'actual cases or controversies between proper litigants.'" *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 661 (D.C. Cir. 1996)). To demonstrate the existence of a case or controversy at the pleading stage, a plaintiff must establish the "irreducible minimum" of constitutional standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must allege a concrete and particularized injury in fact. *Id.* Next, the plaintiff must trace the challenged action to the defendant, and not to any independent action

---

[7] As noted above, DFHV has also moved to dismiss Plaintiffs' complaint for insufficient service of process. *See generally* DFHV Mot. Dismiss Insufficient Service Process, ECF No. 15. Under Federal Rule of Civil Procedure 4(j)(2) DFHV, as a municipally-created governmental organization, may be served by "(A) delivering a copy of the summons and of the complaint to [the Mayor]; or (B) serving a copy of each in the manner prescribed by [District of Columbia] law[.]" Under District of Columbia law, service may be effected by mailing a copy of the summons and complaint to the District of Columbia's Mayor and Attorney General "by registered or certified mail, return receipt requested." D.C. Super. Ct. R. Civ. P. 4(j)(3). Plaintiffs effected service on DFHV via this method, albeit after the Court-ordered deadline. *See* Pls. Proof Service Ex., ECF No. 16-1. Because the Court dismisses Plaintiffs' complaint on other grounds, and because service was effected, the Court exercises its authority under Federal Rule 6(b) to relieve Plaintiffs from the Court's November 30, 2017 Minute Order requiring proper service by December 7, 2017. Accordingly, it denies DFHV's motion to dismiss under Federal Rule 12(b)(5).

of a third party. *Id.* Last, the plaintiff must show that the injury is redressable by a favorable decision. *Id.* at 561.

Injury in fact is an invasion of a legally cognizable interest that is "actual and imminent, not conjectural or hypothetical." *Chlorine Inst., Inc. v. Fed. R.R. Admin.*, 718 F.3d 922, 927 (D.C. Cir. 2013); *Abulhawa v. U. S. Dep't of Treasury*, 239 F. Supp. 3d 24, 32 (D.D.C. 2017); *see also Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007) ("[W]hen the Supreme Court used the phrase 'legally protected interest' as an element of injury-in-fact, it made clear it was referring only to a 'cognizable interest'"). Economic injuries, however slight, suffice to establish injury in fact, even when government action causes those injuries. *Neighborhood Assistance Corp. of Am. v. CFPB*, 907 F. Supp. 2d 112, 121 (D.D.C. 2012) (citing *Clinton v. City of N.Y.*, 524 U.S. 417, 432–33 (1998); *Cal. Forestry Ass'n v. Thomas*, 936 F. Supp. 13, 17 (D.D.C. 1996)); *see also Conservation Law Found. v. Pritzker*, 37 F. Supp. 3d 234, 243 (D.D.C. 2014) (holding that the economic harm that the plaintiff claimed would arise from a Department of Commerce decision was "undeniably a cognizable interest for purposes of standing") (quoting *Lujan*, 504 U.S. at 562–63).

Moreover, when pleading injury in fact, "[g]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Osborn v. Visa Inc.*, 797 F.3d 1057, 1063–64 (2015). Thus, when determining whether the plaintiff suffered an injury in fact, the Court focuses "not on the availability of alternative remedies," but on the plaintiff's general allegations of injury. *Cmty. Nutrition Inst. v. Block*, 698 F.2d 1239, 1247 (D.C. Cir. 1983); *cf. Chamber of Commerce v. SEC*, 412 F.3d 133, 138 (D.C. Cir. 2005) (holding

that "the inability of consumers to buy a desired product . . . constitute[s] injury-in-fact even if they could ameliorate the injury by purchasing some alternative product").

The ripeness doctrine, which addresses whether "a federal court can or should decide a case," is bound up with the requirements of Article III standing. *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012) (citation omitted). Accordingly, in determining whether a case is ripe, the Court must determine whether the plaintiff suffered an injury in fact that is "imminent" or "certainly impending," and it must determine whether the defendant's action was sufficiently "final." *Id.* at 386–87. In so doing, the Court must ensure that judicial determination would not interfere "with an agency policy that is currently undergoing change or development." *Great Lakes Gas Transmission Ltd. P'ship v. Fed. Energy Regulatory Comm'n*, 984 F.2d 426, 431 (D.C. Cir. 1993).

DFHV argues that the Court lacks jurisdiction over this matter because (1) Plaintiffs do not sufficiently allege injury in fact; and (2) Plaintiffs have not applied for H-Tags under the new regulations and therefore have failed to exhaust their administrative options, rendering their claims unripe for judicial review. DFHV Mem. at 5–7. Specifically, DFHV asserts that Plaintiffs fail to allege injury in fact because they do not "claim that they have been denied H-Tags," nor do they argue "that it is futile for them to make such an application." *Id.* at 6. DFHV further asserts that Plaintiffs have not suffered *actual* injury in fact because they may obtain H-Tags if they purchase wheelchair-accessible or electric-powered vehicles. *See id.* at 5–7. These arguments, however, are misguided.

First, Plaintiffs sufficiently allege injury in fact. They claim that DFHV's misrepresentations about H-Tag eligibility requirements cost them 800 dollars in tuition for the Taxicab Operator's Course, and that Defendants' conspiracy to monopolize the taxicab market

cost them profits that they would have obtained had they been able to operate their own taxis rather than been forced to lease taxis from others. *See* Compl. ¶¶ 27–28, 54–55, 82, 87. These types of economic injuries have long been accepted as satisfying the injury in fact requirement. *See Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) (holding that economic harm "clearly constitutes injury in fact," that "the amount is irrelevant," and that one dollar of harm is sufficient for standing purposes). Furthermore, DFHV's contention that Plaintiffs fail to allege injury in fact because they could pursue an alternative method of obtaining H-Tags— purchasing new cars—is not dispositive because when "determining whether [Plaintiffs have] alleged a definable and discernable injury, the focus is on the plaintiffs' allegations, not on the availability of alternative remedies." *Cmty. Nutrition Inst.*, 698 F.2d at 1247.[8]

Second, Plaintiffs' claims concerning DFHV's H-Tag regulation and their ineligibility for H-Tags under that regulation are ripe for judicial review. DFHV's reliance on *American Petroleum Institute v. EPA*, 683 F.3d 382 (D.C. Cir. 2012), to suggest that Plaintiffs must apply for and be denied H-Tags before bringing this action is unpersuasive because it involved an inapposite agency action. *See* DFHV Mem. at 7. In that case, the D.C. Circuit held that the plaintiff's challenge to an agency rulemaking was unripe for judicial review because the agency released a notice of proposed rulemaking *after* the parties completed briefing that, if adopted, would alter the challenged regulation and therefore refine the action's legal issues. *Id.* at 388. Unlike the agency in *American Petroleum*, however, DFHV provides no argument that either their H-Tag regulation or Plaintiffs' inability to obtain H-Tags are tentative in any sense.

---

[8] Moreover, DFHV's hypothetical alternative here would require Plaintiffs to spend additional money to purchase new vehicles, when DFHV's alleged misrepresentations led Plaintiffs to believe they could obtain H-Tags with regular taxicabs. That still constitutes an economic injury, albeit an alternative one.

Moreover, Plaintiffs assert that the H-Tag regulation presently bars their eligibility for H-Tags, and therefore that their applications would be futile. Compl. ¶¶ 28–30; *see also Nat'l Envtl. Dev. Assocs. Clean Air Project v. EPA*, 752 F.3d 999, 1003, 1007–08 (D.C. Cir. 2014) (holding a matter ripe where an EPA directive had yet to be implemented but created a "binding and enforceable policy" that would likely cause Plaintiff to suffer direct competitive injury in the near future). [9] Plaintiffs are not required to apply for and be denied an H-Tag in order to challenge the regulation that plainly prohibits them from qualifying for one.

Accordingly, because Plaintiffs' claims are ripe for review and they possess standing to bring them, this matter is within the Court's subject-matter jurisdiction. Plaintiffs allege an actual injury and do not ask the Court to speculate as to the possible adverse effects of Defendants' alleged misconduct. The Court therefore denies DFHV's motion to dismiss for lack of subject-matter jurisdiction and will now address Defendants' motions to dismiss for failure to state a claim for relief.

### B. Individual Claims

Having determined that Plaintiffs have standing and that the action is ripe, the Court will evaluate Plaintiffs' specific claims. Plaintiffs assert promissory estoppel, fraudulent

---

[9] Plaintiffs also sufficiently plead the other elements of standing; causation and redressability. Plaintiffs allege that DFHV and Mr. Schaeffer collaborated to create and implement the H-Tag regulation that directly bars Plaintiffs' ability to own, operate, and profit from taxicabs. Compl. ¶¶ 28–30. Accordingly, they trace their economic injuries directly to the actions of DFHV and Mr. Schaeffer, not to the "action of some third party not before the [C]ourt." *Chesapeake Climate Action Network v. Exp.-Import Bank of the United States*, 78 F. Supp. 3d 208, 224 (D.D.C. 2015) (internal quotation marks omitted). Furthermore, Plaintiffs seek to recoup the lost profits that they would allegedly have received if granted H-Tags, and they ask the Court to order DFHV to issue them the H-Tags that they claim have been improperly withheld. They have thus established a "causal connection between the alleged injury and the judicial relief requested" sufficient to grant standing. *Citizens for Responsibility & Ethics v. U.S. Dep't of Treasury*, 21 F. Supp. 3d 25, 36 (D.D.C. 2014).

misrepresentation, and negligent supervision claims against DFHV, and equal protection and antitrust claims against both DFHV and Mr. Schaeffer.  As explained below, the Court holds that Plaintiffs fail to state any claim upon which relief may be granted.  Accordingly, the Court dismisses Plaintiffs' complaint in its entirety.

## 1.  Promissory Estoppel

First, the Court addresses Plaintiffs' promissory estoppel claim against DFHV.  To establish a prima facie case of promissory estoppel, Plaintiffs must sufficiently allege: (1) the existence of a promise; (2) that DFHV expected Plaintiffs to take definite action in reliance on that promise; (3) that Plaintiffs reasonably relied on DFHV's promise to their detriment; and (4) that the promise must be enforced to avoid injustice.  *Morris v. Runyon*, 870 F. Supp. 362, 373 (D.D.C. 1994); *see also Robbins v. Reagan*, 780 F.2d 37, 51 n.22 (D.C. Cir. 1985).  DFHV argues that Plaintiffs fail to allege a promise, and that even if they did, their reliance on it was unreasonable because "[P]laintiffs allege only that they were relying on an anticipated change in the law to make them eligible for H-Tags."  DFHV Mem. at 8–9.  The Court agrees that Plaintiffs fail to plead reasonable reliance on the alleged promise made by unidentified DFHV officials.[10]

Plaintiffs allege that DFHV promised to regulate the taxicab market in a particular fashion.  They claim that "[d]uring a series of meetings from 2011 up through and including 2015, they were repeatedly told by taxicab commission officials that if they registered with the DFHV and secured the requisite certificate . . . attended and completed various classes at UDC,

---

[10] DFHV also argues that Plaintiffs' claim fails because promissory estoppel is inapplicable against the District of Columbia, and because Plaintiffs seek only monetary damages.  DFHV Mem. at 8.  However, Plaintiffs seek equitable relief along with monetary damages, *see* Compl. ¶¶ 34, 69, and the Court need not address these arguments because Plaintiffs fail to sufficiently plead the elements of promissory estoppel.

they would be entitled to receive an H tag."  Compl. ¶ 26.  Plaintiffs do not identify the

"officials" who made these representations, nor do they describe the circumstances of the

"meetings."  Plaintiffs do, however, acknowledge that they were aware at this time that their H-

Tag eligibility would be governed by DFHV regulations ending the H-Tag moratorium.  They

state that they "desired to know *once the moratorium was lifted* what they had to do to secure an

H tag and a valid license so they could work in the District driving their own cab."  Compl. ¶ 26

(emphasis added).  They also state that "they subsequently learned that the new regulations . . .

specifically barred them permanently from applying for an H tag, much to their astonishment."

Compl. ¶ 28.  In other words, they claim that the unidentified "taxicab officials" promised that

the District of Columbia would promulgate an H-Tag regulation favorable to their interests, and

they were harmed when the regulation was unfavorable.[11]

It was not reasonable for Plaintiffs to rely on these alleged promises made by individual

DFHV officials given that the promises could only become operative through regulations issued

by DFHV, incorporating public input.  Courts have long held that oral promises by individual

officials are not sufficient to bind the government to a course of action.  *See Heckler v. Cmty.

Health Servs. of Crawford Cty, Inc.*, 467 U.S. 51, 64–65 (1984)  (holding that "estoppel cannot

be erected on the basis of . . . oral advice," especially "informal advice"); *Genesis Health

Ventures, Inc. v. Sebelius*, 798 F. Supp. 2d 170, 185 (D.D.C. 2001) (holding that the plaintiff's

---

[11] Plaintiffs also allege, in support of this claim, that they were "encouraged" to take the taxicab operator's course by another unidentified DFHV official, Compl. ¶ 52, and that DFHV announced on September 15, 2015 that "there would be a new path for taxicab drivers to secure an H tag," Compl. ¶ 51.  However, the complaint and Plaintiffs' affidavit make clear that the alleged encouragement occurred while Plaintiffs were already attending the course, so they could not have relied on that encouragement to enroll in the course.  Mem. P. & A. Supp. Pls.' Opp'n Dep't for Hire-Vehicles Mot. to Dismiss ("Pls. Opp'n") Ex. 1 ¶ 14, ECF No. 21-1.  And Plaintiffs do not explain whether what was announced on September 15, 2015 matched the alleged promises made over the previous four years.

"decision to rely on [oral] advice [of a government intermediary] in deciding not to maintain records . . . was not reasonable"). Moreover, "'[w]hen the agent of the government whose representations are relied upon plainly lacks the authority to do whatever he has promised . . . 'the promisee's reliance cannot be 'reasonable.'" *Winder v. Erste*, 60 F. Supp. 3d 43, 51 (D.D.C. 2014) (quoting *District of Columbia v. Brookstowne Cmty. Dev. Co.,* 987 A.2d 442, 450 (D.C. 2010)). Plaintiffs fail to state that the promisers here had any involvement whatsoever in the promulgation of the H-Tag regulation, much less that they had authority to influence that regulation. Furthermore, the H-Tag Report issued publicly on August 28, 2015 makes clear that there were several competing positions on how to most equitably end the H-Tag moratorium. *See* H-Tag Report at 5–6. It was unreasonable for Plaintiffs to rely on the position that would benefit them, ignoring the other positions. *See United States v. Exxon Corp.*, 561 F. Supp. 816, 845 (D.D.C. 1983) (holding that it was not reasonable for the plaintiff to rely on "informal statements by agency employees" while ignoring statements to the contrary). Accordingly, Plaintiffs' claim for promissory estoppel against DFHV must be dismissed because Plaintiffs fail to plead that their reliance on the alleged promises of unidentified DFHV officials was reasonable.

## 2. Fraudulent Misrepresentation

Second, the Court addresses Plaintiffs' fraudulent misrepresentation claim against DFHV, which is based on statements made by two unidentified DFHV officials. *See* Compl. ¶¶ 56–59. "To establish a claim for fraudulent misrepresentation under District of Columbia law, a plaintiff must allege: '(1) that a false representation was made, (2) in reference to a material fact, (3) with knowledge of its falsity, (4) with intent to deceive, and (5) action taken in detrimental reliance upon the representation.'" *Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of U.S.*,

258 F. Supp. 3d 1, 13 (D.D.C. 2017) (quoting *Sibley v. St. Albans Sch.*, 134 A.3d 789, 808–09 (D.C. 2016)).  Federal Rule of Civil Procedure 9(b) requires a complaint to "state with particularity, the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  In other words, it must state the "who, what, where, when, and how" surrounding the fraudulent conduct.  *FTC v. Cantkier*, 767 F. Supp. 2d 147, 154 (D.D.C. 2011).

The Court's analysis begins and ends with Plaintiffs' failure to identify the individuals involved in the alleged fraudulent conduct, as required by Rule 9(b)'s heightened pleading standard.  To survive a motion to dismiss, a Plaintiff alleging fraud must "identify with specificity" the individuals involved in the fraudulent activity.  *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1257 (D.C. Cir. 2004) (citing *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385–86 (D.C. Cir. 1981)).  For instance, in *Martin-Baker*, this Circuit dismissed a plaintiff's fraud claim against his former employer because, among other pleading deficiencies, the plaintiff failed to identify the individuals involved in the alleged fraudulent conduct, despite having been employed by them for five years.  *Id.*

Similarly, Plaintiffs here allege that DFHV officials misrepresented the H-Tag requirements at a series of meetings throughout a five-year period, but they surprisingly cannot identify one specific official who made these representations.  *See generally* Compl. (referring only to "unknown DFHV officials").  A complaint with such a deficiency not only fails to provide the defendant with sufficient information to formulate a response, but also subjects the defendant to "vague, potentially damaging accusations of fraud" without proper support.  *See Martin-Baker*, 389 F.3d at 1257*; Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 97 (D.D.C. 2010).  Accordingly, Plaintiffs' claim for fraudulent misrepresentation against DFHV must be dismissed because Plaintiffs fail to plead the "who" involved in the fraudulent conduct.

### 3. Negligent Supervision

Third, the Court briefly addresses Plaintiffs' negligent supervision claim against DFHV. To assert a claim for negligent supervision, Plaintiffs must show: "(1) that [DFHV] 'knew or should have known its employee[s] behaved in a dangerous or otherwise incompetent manner,' and (2) that [DFHV], 'armed with that actual or constructive knowledge, failed to adequately supervise [its employees].'" *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 79 (D.D.C. 2005) (quoting *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985)). Moreover, Plaintiffs must "identify the individual[s] over whom [DFHV] had a duty to supervise, such that the failure to properly exercise this duty would give rise to a negligent supervision claim by the plaintiff." *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 100 (D.D.C. 2010) (citing *Brown v. Argenbright Sec., Inc.,* 782 A.2d 752, 760 (D.C. 2001)). DFHV argues that this claim is deficient because Plaintiffs' pleading is conclusory. DFHV Mem. at 12–13. The Court agrees.

Plaintiffs fail to properly allege the elements of negligent supervision. First, Plaintiffs fail to allege that DFHV knew or should have known that its employees made the alleged misrepresentations. [12] Second, Plaintiffs fail to identify the individuals over whom DFHV had a duty to supervise. Moreover, Plaintiffs' lone allegation is conclusory in nature—it is a mere recitation of the claim itself, that DFHV failed to adequately monitor its employees' alleged misrepresentations about H-Tag eligibility requirements. Compl. ¶ 61; *see Spiller v. District of Columbia*, 302 F. Supp. 3d 240, 254–55 (D.D.C. 2018) (dismissing a negligent supervision claim against the District because the complaint consisted of conclusory statements that the District failed to properly supervise and train its officers, but it did not reference "*any* of the necessary

---

[12] Furthermore, as discussed above, Plaintiffs fail to sufficiently allege the misrepresentations upon which their negligent supervision claim is based.

legal elements").  Because Plaintiffs fail to plead the elements of negligent supervision, and thereby fail to provide DFHV "fair notice of what the claim is and the grounds on which it rests," this claim must be dismissed.  *Twombly*, 550 U.S. at 555.

### 4.  Equal Protection

Fourth, the Court addresses Plaintiffs' equal protection claim against DFHV and Mr. Schaeffer.  The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1. [13]  An equal protection claim thus arises where an individual alleges "that he or she received differential treatment by the government due to membership in a protected class, such as one based on race, national origin, or gender," *Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 122 (D.D.C. 2012) (citing *Jones v. Helms*, 452 U.S. 412, 424 n.23 (1981)), or that the challenged regulation implicates a fundamental right, *Heller v. Doe*, 509 U.S. 312, 319 (1993).

However, "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity . . . [and] cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."  *Id.* at 319-20.  For such a classification, "[e]ven at the motion to dismiss stage, a plaintiff alleging an equal protection violation must plead facts that establish that there is not 'any reasonable conceivable state of facts that could provide a rational basis for the classification.'"  *Hettinga v. United States*, 677 F.3d 471, 479 (D.C. Cir. 2012) (quoting *Dumaguin v. Sec'y of Health and Human Servs.*, 28 F.3d 1218 1222 (D.C. Cir. 1994)).  Under this standard, "a law will be sustained if it can be said to advance a legitimate government

---

[13] The Fourteenth Amendment's equal protection clause applies to the District of Columbia via the Fifth Amendment's due process clause.  *Creese v. District of Columbia*, 281 F. Supp. 3d 46, 52 n.2 (D.D.C. 2017) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)).

interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Gordon* v. *Holder*, 721 F.3d 638, 656 (D.C. Cir. 2013) (quoting *Romer v. Evans*, 517 U.S. 620, 632 (1996)) (internal quotation marks omitted).

DFHV urges the Court to dismiss this claim because Plaintiffs fail to allege that they belong to a protected class, they fail to allege that they were deprived of a fundamental right, and they fail to allege that DFHV lacked a rational basis for promulgating the H-Tag regulation. DFHV Mem. at 13–14.[14] Applying the principles laid out above, this argument is well-taken.

First, Plaintiffs do not specify that they belong to a protected class, but rather only that DFHV and Mr. Schaeffer "have treated the class of plaintiffs named herein (and other drivers) in an unequal manner." Compl. ¶ 67. This type of amorphous class based on employment status is not a "protected class, such as one based on race, national origin, or gender," justifying heightened constitutional scrutiny. *Kelley*, 893 F. Supp. 2d at 122.

Second, Plaintiffs do not plead a deprivation of any fundamental right. They allege that the H-Tag regulation deprives them of the "opportunity to work" as self-employed taxicab drivers. Compl. ¶ 65. However, "the right to engage in a chosen profession is not a fundamental right that triggers heightened scrutiny under the Equal Protection Clause." *Doe v. Rogers*, 139 F. Supp. 3d 120, 156 (D.D.C. 2015) (collecting cases); *see also Schware v. Bd. of Exam'rs*, 353 U.S. 232, 239 (1957) (allowing a state to require "high standards of qualification" to practice law so long as those standards had a *rational* connection to an applicant's fitness to practice). Accordingly, because Plaintiffs fail to show that the H-Tag regulation singles out a protected

---

[14] Plaintiffs somewhat confusingly argue that their equal protection claim does not challenge the validity of the H-Tag regulation itself, but only the manner in which it was drafted and implemented. Pls. Opp'n, at 16, ECF No. 21. However, regardless of how Plaintiffs frame their argument, they do challenge the validity of the H-Tag regulation, at least as applied to them, because the alleged unconstitutional differential treatment stems from that regulation.

class or implicates a fundamental right, they must allege that there is no rational basis for the H-Tag regulation. *Heller*, 509 U.S. at 319–20.

Applying the rational basis standard, Plaintiffs have failed to negate "every conceivable basis which might support the [H-Tag regulation]." *Gordon*, 721 F.3d at 656 (D.C. Cir. 2013) (quoting *FCC v. Beach Commc'ns*, 508 U.S. 307, 315 (1993)) (internal quotations omitted). As DFHV notes, the Notice of Final Rulemaking for the H-Tag regulation lists the rational reasons for the regulation's implementation. [15] According to the Notice, among other reasons, DFHV restricted the granting of H-Tags for regular taxicabs to avoid "an unlimited avenue for licenses that would flood the market with new taxicabs at a time when taxicab service is shrinking, and passenger demands for accessible service and efficient vehicles is on the rise." 64 D.C. Reg. 2255 (Feb. 24, 2017). This justification is adequate under the highly deferential rational basis review. *See Gebresalassie v. District of Columbia*, 170 F. Supp. 3d 52, 68 (D.D.C. 2016) (upholding DFHV's for-hire vehicle licensing scheme under rational basis review). Because Plaintiffs fail to allege that the H-Tag regulation implicates a protected class or a fundamental right, and because Plaintiffs fail to negate the rational bases on which the regulation was promulgated, Plaintiffs' equal protection claim must be dismissed.

### 5. Antitrust Violations Under the Sherman Act and D.C. Code § 28-4503[16]

Fifth, and finally, the Court addresses Plaintiffs' claims for (1) attempted monopolization; and (2) conspiracy to monopolize, brought against Mr. Schaeffer and DFHV

---

[15] As with the H-Tag Report, the Court may take judicial notice of this public record at the motion to dismiss stage. *See D.C. Prof'l Taxicab Drivers Ass'n v. District of Columbia*, 880 F. Supp. 2d 67, 72 (D.D.C. 2012) (taking judicial notice of a DCTC Notice of Final Rulemaking in deciding a motion to dismiss).

[16] It is unclear from the complaint whether Plaintiffs bring their antitrust claims under the Sherman Act, the District of Columbia Code, or both. *See* Compl. ¶¶ 84–87. However, the Court must construe Plaintiffs' complaint liberally, and it will therefore presume that Plaintiffs

under the Sherman Act, 15 U.S.C. § 2, and D.C. Code § 28-4503.[17]  To sufficiently assert a claim for attempted monopolization, a plaintiff must allege that Defendants had (1) "a specific intent to destroy competition or control competition in the relevant market," and (2) "a dangerous probability of success in actually monopolizing the relevant market."  *Dial A Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584, 589 (D.D.C. 1995).  To sufficiently assert a claim for conspiracy to monopolize, a plaintiff must allege "(1) the existence of a combination or conspiracy to monopolize, (2) overt acts done in furtherance of the combination or conspiracy, (3) an effect upon an appreciable amount of interstate—or intrastate, for a claim under the D.C. Code—commerce, and (4) specific intent to monopolize a designated segment of commerce." *GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 44 (D.D.C. 1998) (citation omitted).

Defendants make several arguments for why these antitrust claims should not survive. DFHV urges the Court to dismiss the claims for failure to adequately plead "antitrust standing," and in the alternative it insists that it is immune from antitrust liability as an instrumentality of the District of Columbia government.  *See* DFHV Mem. at 15–20.  Mr. Schaeffer argues, among other arguments, that he is similarly immune from antitrust liability under the *Noerr-Pennington* doctrine.  Schaeffer Mem. at 25–29.  Because the Court agrees that both Defendants are immune

---

bring their claims under both statutes.  *See Kettey v. Saudi Ministry of Educ.*, 53 F. Supp. 3d 40, 53 (D.D.C. 2014) ("The complaint is construed liberally in the plaintiff's favor, and the plaintiff is given the benefit of all inferences that can be derived from the facts alleged."); *see also* Pls. Opp'n at 22 (claiming that Plaintiffs have brought claims arising under the Sherman Act).

[17] Courts look to Sherman Act case law when interpreting the District of Columbia's antitrust laws, because the language of D.C. Code § 28-4503 mirrors the federal statute. *See GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 45 (D.D.C. 1998) (noting that the "analysis for federal antitrust claims provide much force" with respect to the District's antitrust provisions because those provisions "essentially track" the language of federal antitrust statutes).  The Court will therefore analyze Plaintiffs' D.C. Code and Sherman Act monopolization allegations together.

from antitrust liability under the facts alleged, and therefore that the antitrust claims must be dismissed, it need not consider the sufficiency of Plaintiffs' factual allegations. The Court will discuss each immunity argument in turn.

### i. DFHV is immune from antitrust liability under the state-action doctrine

The Court first addresses whether DFHV is entitled to state-action immunity from antitrust liability. Sub-state governmental entities are immune from antitrust liability so long as they act "pursuant to state policy to displace competition with regulation" that is "clearly articulated and affirmatively expressed." *FTC v. Phoebe Putney Health Sys.*, 568 U.S. 216, 226 (2013) (quoting *Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 413 (1978)). A governmental entity's actions are "clearly articulated and affirmatively expressed as state policy . . . if the anticompetitive effect was the 'foreseeable result' of what the [s]tate authorized." *Id.* at 226–27 (quoting *Hallie v. Eau Claire*, 471 U.S. 34, 42 (1985)). But, "a state legislature need not 'expressly state in a statute or its legislative history that the legislature intends for the delegated action to have anticompetitive effects.'" *Id.* at 226 (quoting *Hallie*, 471 U.S. at 43).

The Supreme Court's decision in *City of Columbia v. Omni Outdoor Advertising* provides a helpful framework for analyzing local regulations that appear to restrict competition. 499 U.S. 365 (1991). In that case, the Court evaluated whether a municipal ordinance that restricted the "size, location, and spacing of billboards" throughout Columbia, South Carolina violated the federal antitrust laws. *Id.* at 368–70. The plaintiff, a new entrant to the billboard market, alleged that the ordinance was "the result of an anticompetitive conspiracy between city officials" and one of the plaintiff's largest local competitors, and consequently that the alleged conspiracy "stripped both parties of any immunity they might otherwise enjoy from the federal antitrust laws." *Id.* at 369. Disagreeing, the Court held that "no more is needed to establish . . . the city's

authority to regulate than its unquestioned zoning power over the size, location, and spacing of billboards," specifically authorized by a state statute. *Id*. at 372 (citations omitted). It explained that South Carolina clearly articulated its authorization of the city's anticompetitive conduct because suppression of competition was the "foreseeable result" and the "very purpose" of regulation limiting the billboard supply. *Id*. at 373. The Court reaffirmed its "rejection of any interpretation of the Sherman Act that would allow plaintiffs to look behind the actions of state sovereigns to base their claims on 'perceived conspiracies to restrain trade.'" *Id*. at 379 (quoting *Hoover v. Ronwin*, 466 U.S. 558, 580 (1984)). It also reiterated that "*any* action that qualifies as state action is '*ipso facto* . . . exempt from the operation of the antitrust laws'" because the Sherman Act "condemns trade restraints, not political activity." *Id*. (citations omitted).

Like the *Omni* plaintiffs, Plaintiffs here allege that the H-Tag regulation is the result of a conspiracy between DFHV and Mr. Schaeffer, their potential competitor, to suppress competition and monopolize the taxicab market. *See* Compl. ¶¶ 71–87. And like the state statute authorizing the billboard regulation in *Omni*, here, DFHV had the authority and duty—granted by the District of Columbia—to regulate the District's taxicab industry, and DFHV utilized that authority to implement the H-Tag regulation.[18] *See* D.C. Code § 50-301.07.

While DFHV's H-Tag regulation has, without a doubt, displaced competition in the District's taxicab market, such displacement is the "inherent, logical, [and] ordinary result of the exercise of authority delegated by the [District]." *N.C. State Bd. of Dental Exam'rs v. FTC*, 135

---

[18] With respect to Plaintiffs' D.C. Code claim, in addition to the state action immunity doctrine, D.C. Code § 28-4518 explicitly precludes antitrust liability for "conduct or activity specifically regulated, permitted, or required by any regulatory body, agency, or commission acting under statutory authority of the District of Columbia . . . ." D.C. Code § 28-4518 (2018). Because DFHV acted under its statutory authority to regulate the District of Columbia taxicab market when it passed the H-Tag regulation, *see* D.C. Code § 50-301.07, section 28-4518 immunizes that activity.

S. Ct. 1101, 1112 (2015) (internal quotations and citation omitted). The H-Tag regulation's anticompetitive effects were foreseeable because the very function of regulation and licensure is to displace and limit business in a way that usually prevents or inhibits new competition. Plaintiffs' allegations that Mr. Schaeffer kept an office in the same building as DFHV, Compl. ¶ 25, and that he otherwise influenced the H-Tag regulation, Compl. ¶¶ 7, 28, 58, do not strip DFHV of its immunity for regulatory activity. Accordingly, the Court dismisses Plaintiffs' antitrust claims against DFHV.

**ii. Mr. Schaeffer is immune from antitrust liability under the *Noerr-Pennington* doctrine[19]**

The Court next addresses whether Mr. Schaeffer's alleged efforts to persuade DFHV to pass the H-Tag regulation are immune from antitrust liability under the *Noerr-Pennington* doctrine. The Court holds that they are.

The *Noerr-Pennington* doctrine, "regardless of [the defendant's] intent or purpose," *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965), immunizes the concerted efforts of individuals "to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." *E. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961). Efforts by private individuals to secure legislation are immune from antitrust liability "because '[legislative] branches of government act on behalf of the people, and to a very large extent, the whole concept of representation depends upon the ability of people to make their wishes known to their representatives.'" *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 37 (D.D.C. 2007) (quoting *Noerr Motor*

---

[19] The *Noerr-Pennington* doctrine applies equally to antitrust violations brought under the D.C. Code and under the Sherman Act. *See WAKA, LLC v. DC Kickball*, 517 F. Supp. 2d 245, 252 (D.D.C. 2007) (applying *Noerr-Pennington* to antitrust claims brought under D.C. Code § 28-4503).

*Freight, Inc.*, 365 U.S. at 137). In this vein, the Supreme Court has expressed that holding

defendants liable for antitrust violations solely because they lobbied for certain laws "would

substantially impair the power of government to take actions through its legislature and

executive that operate to restrain trade." *Noerr Motor Freight, Inc.*, 365 U.S. at 137. The *Noerr-*

*Pennington* doctrine applies to efforts intended to persuade administrative agencies like

DFHV—"which are both creatures of the legislature, and arms of the executive"—to pass

legislation. *City of Moundridge*, 471 F. Supp. 2d at 37 (quoting *Cal. Motor Transp. Co. v.*

*Trucking Unlimited*, 404 U.S. 508, 510 (1972)).

However, "[n]ot all conduct intended to influence the political process is immune" from

antitrust liability, for the *Noerr-Pennington* doctrine's scope "depends on 'the source, context,

and nature of the anticompetitive restraint at issue.'" *Id.* (quoting *Allied Tube & Conduit Corp.*

*v. Indian Head*, 486 U.S. 492, 499 (1988)). "[W]hen government action is the source of an

alleged antitrust violation, the private party is immune because 'the intervening government

action breaks the causal chain.'" *Id.* (quoting *Andrx Pharm., Inc. v. Biovail Corp. Int'l*, 256 F.3d

799, 818 (D.C. Cir. 2001)). But, under the "sham" exception of *Noerr-Pennington*, a private

party may be held liable for antitrust violations if its lobbying activities are "actually nothing

more than an attempt to interfere directly with the business relationships of a competitor." *Fed.*

*Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 663 F.2d 253, 261 (D.C. Cir. 1981) (quoting *Noerr*

*Motor Freight, Inc.*, 365 U.S. at 144).

When attempting to influence a local government agency, neither a private party's

anticompetitive intent, nor its alleged "pattern of actions" designed to destroy a competitor is

sufficient to satisfy the sham exception. *Id.* at 262. Instead, the plaintiff must allege that the

private party "subverted the integrity of the governmental process, that [it] effectively barred [the

plaintiff's] access to [those] processes," or that the nature of those processes caused the private party's alleged persuasive efforts to fall outside the scope of "political activity". *Id.* at 262–63. Actions that fall outside the scope of "political activity" include attempts to "influence governmental action through overtly corrupt conduct, such as bribes," unlawful meetings with government officials, or other forms of inducement that do not constitute legitimate lobbying. *Id.* at 263, 266.

Plaintiffs allege that Mr. Schaeffer and his lobbyist, John Ray, took the following actions to secure the H-Tag regulation: (1) Mr. Schaeffer and Mr. Ray regularly met with DFHV; (2) Mr. Schaeffer informed DFHV of the potential threat that an open-licensing system would pose to his business; (3) Mr. Schaeffer collaborated with DFHV to adopt the H-Tag regulation; and (4) Mr. Schaeffer and Mr. Ray drafted the H-Tag regulation. Compl. ¶¶ 7, 74, 77, 79, 81. However, Plaintiffs do not allege that Mr. Schaeffer and Mr. Ray attempted to bribe DFHV, that they engaged in unlawful meetings with DFHV, that they induced DFHV in any manner beyond legitimate lobbying techniques, or that they prevented Plaintiffs from engaging in the H-Tag regulatory process. In other words, they fail to allege that the efforts of Mr. Schaeffer and Mr. Ray fell outside the scope of "political activity," and therefore Plaintiffs fail to satisfy the "sham" exception to the *Noerr Pennington* doctrine. [20] *Fed. Prescription Serv., Inc.*, 663 F.2d at 262, 266. Thus, DFHV's decision to implement the H-Tag regulation—a governmental action— severs the causal chain between Mr. Schaeffer's alleged influence and any anticompetitive

---

[20] Plaintiffs also allege that they attempted to coordinate a meeting with DFHV's chairman after DFHV implemented the H-Tag regulation, but their efforts were hindered by two unnamed DFHV officials directed by Mr. Schaeffer. Compl. ¶¶ 7, 31. This allegation does not implicate the sham exception, because that exception covers foul play *during* the legislative or regulatory process, and the alleged interference occurred after the H-Tag regulation had already been promulgated. *See Fed. Prescription Serv., Inc.*, 663 F.2d at 262.

effects.  *See City of Moundridge*, 471 F. Supp. 2d at 37, 39.  Accordingly, because Mr.

Schaeffer's efforts to influence the DFHV's regulatory process that resulted in the H-Tag

regulation are immunized by the *Noerr-Pennington* doctrine, the antitrust allegations against him

must be dismissed.

## V.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

- DFHV's motion to dismiss for failure to properly serve the complaint (ECF No. 15) is
  **DENIED**.

- DFHV's motion to dismiss for lack of subject-matter jurisdiction (ECF No. 18) is
  **DENIED.**

- Defendants' motions to dismiss for failure to state a claim for relief (ECF Nos. 9 and 18)
  are **GRANTED.**

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 21, 2018                                                RUDOLPH CONTRERAS
                                                                       United States District Judge